Dallas O. BLACKMON, Jr., Appellant,

v.

PIGGLY WIGGLY CORPORATION et al., Appellees.

No. 5165.

Court of Civil Appeals of Texas, Waco.

Aug. 31, 1972.

Rehearing Denied Oct. 5, 1972.

Stanfield & Greenberg, Robert M. Greenberg, Dallas, for appellees.

## OPINION

McDONALD, Chief Justice.

This is an appeal by plaintiff Blackmon from judgment of $1500. awarded him in a personal injury suit against defendant Piggly-Wiggly.

Defendants' truck sideswiped an automobile operated by plaintiff. Plaintiff sought damages in excess of $900,000. for injuries sustained as a result of the collision. Trial to a jury resulted in findings that plaintiff sustained bodily injuries as a result of the collision; that defendants' driver was guilty of negligence proximately causing the collision, and that plaintiff was not guilty of negligence proximately causing the collision. The damage issues and the jury's answers are quoted:

"Issue No. 24. What sum of money if any, if paid now in cash, do you find from a preponderance of the evidence will reasonably and fairly compensate D. O. Blackmon, Jr., for his physical pain and mental suffering in the past, if there has been any in the past, and in the future, if you find in all reasonable probability there will be any in the future, and for his loss of earnings in the past, if there have been any in the past, and for any loss of capacity to earn money in the future, if in all reasonable probability you find there will be any in the future, all as a direct result of the injuries, if any, sustained by plaintiff D. O. Blackmon, Jr., in the collision in question?"

"Answer: $1500."

"Issue No. 26. What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence will reasonably and fairly compensate D. O. Blackmon, Jr., for his reasonable and necessary doctors' and hospital expenses in the future, if you find in all reasonable probability there will be any in the

Holley, Flagg, Hayer & Miller, Lamar Holley, Woodruff, Kendall & Smith, Dallas, for appellant.

future, all as a direct result of the injuries, if any, sustained by him in the collision in question?"

"Answer: None".

The trial court rendered judgment on such verdict for plaintiff for $1500.

Plaintiff appeals seeking a reversal and remand on 7 points:

1) The answer of the jury to Issue 24 was against the great weight and preponderance of the evidence.

2) The damages found by the jury in answer to issue 24 are manifestly too small.

3) The answer of the jury to Issue 26 was against the great weight and preponderance of the evidence.

4) The jury by answering "None" to Issue 26 has awarded damages which are manifestly too small.

5), 6), & 7) The testimony of Dr. Suggs, Dr. Curry, and Dr. Blomquist was hearsay and entitled to no weight.

Plaintiff's contentions 1 thru 4 assert the jury's answer of $1500. to issue 24 (plaintiff's damages for physical pain and mental suffering, and loss of earnings, as a direct result of injuries sustained in the collision); and the jury's answer of NONE to issue 26 (future medical expense to be incurred by plaintiff as a direct result of the collision); are manifestly too small, and against the great weight and preponderance of the evidence.

Plaintiff was 23 years old when the accident occurred on September 1, 1969. He had worked for some years and for as much as $500. per month. After the collision he was in pain in both his chest and his left foot. He was hospitalized for 8 days. He was later hospitalized for a week in Tyler in November 1969. He was hospitalized for a week in Houston. He was seen by Drs. McCorkle, Freiberg, Selman, Jones, Muntz and Nelson. He was given tests, X-rayed, and electrocardiograms were run on him. He has not worked since the accident, and testified he has pain every day; and that his chest hurts him. Other lay witnesses testified as to the foregoing. Dr. McCorkle testified plaintiff had chest pains, an injured ankle and body bruises after the accident; that he thought plaintiff had a fractured sternum, and was totally disabled and would suffer the rest of his life. Dr. Nelson testified he examined plaintiff on April 2, 1970, ordered an electrocardiogram and diagnosed "essential hypertension and a chest wall injury"; that his blood pressure was high; that he had pain and was worried and apprehensive; that he saw him in March 1971 and that plaintiff had chest pain which radiated into his neck. He took plaintiff's blood pressure and did an electrocardiogram, and diagnosed "myocardial insufficiency"; and felt plaintiff would require future medical services and hospitalization. Dr. Jones testified he had seen plaintiff first on September 2, 1969 and some 30 times in 1971; that plaintiff had a fractured sternum, sprained ankle and multiple chest contusions, and that plaintiff suffers from myocardial insufficiency; high blood pressure; that in his opinion such results from the accident, and that plaintiff will be disabled indefinitely in the future.

Plaintiff also testified he was hurt in 1965 when a man ran a stop sign and hit him; that he was hurt in his neck; that he recovered $2000. for this injury; and had completely recovered. He further testified he was in an automobile accident in 1968, went to a Dr. Weary, but was not injured.

Plaintiff had been treated for colds, bronchitis and upper respiratory infection prior to the September 1969 accident. Dr. McCorkle testified plaintiff's X-rays taken after the accident showed bronchitis.

Dr. Blomquist a witness for defendant testified that he examined electrocardiograms of plaintiff and they were within normal limits. Dr. McCumbert X-rayed plaintiff for Dr. McCorkle. Such X-ray report of Dr. McCumbert showed no evi-

dence of a fracture of the sternum. Dr. Millwee, a witness for plaintiff, examined X-rays of plaintiff and testified the preponderance of X-ray evidence would indicate there was no significant injury to the sternum. He further testified an X-ray made in Mineola and which was in evidence, showed fracture of the sternum "which in all reasonable medical probability had healed by March 1, 1971".

Dr. Curry a defense witness testified he examined X-rays of plaintiff "in this court room" and in his opinion they were normal. These X-rays were never introduced into evidence.

Dr. Blomquist a defense witness, examined electrocardiograms which are in evidence, and testified he found no sign of heart disease or myocardial insufficiency, and no evidence of total disability of the heart, or of "traumatic damage" to the heart.

Dr. Sugg, a defense witness, testified in answer to hypothetical questions that in his opinion the September 1969, accident did not cause hypertension, or myocardial insufficiency; that he could not relate plaintiff's pain to the accident and that plaintiff should not be totally disabled with the type of injuries related.

 What may jurors do with conflicting evidence before them? They may disbelieve a witness though he is neither impeached nor contradicted. Cheatham v. Riddle, 12 Tex. 112. They may believe one witness and disbelieve others. Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561. They may resolve conflicts and inconsistencies in the testimony of any one witness as well as the testimony of different witnesses. Benoit v. Wilson, 150 Tex. 273, 239 S.W.2d 792. They are not required to depend on the evidence from a single source: Texas & N. O. Ry. Co. v. New, Tex.Civ.App., Er. Dis., 95 S.W.2d 170. They may accept or reject in whole or in part opinion testimony of physicians. They may accept lay testimony over that of experts. Opinion

testimony does not establish material facts as a matter of law. Hood v. Texas Indemnity Ins. Co., 141 Tex. 522, 209 S.W.2d 345. And they may disbelieve an interested witness even if uncontradicted. Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 166 S.W.2d 904.

 This court has the power to reverse where the finding of the jury is so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust, but we are not authorized to substitute our judgment for that of the jury simply because we might have reached a different conclusion on the facts.

 We have examined the entire record and it is our opinion that the jury's answers to Issues 24 and 26 are not so contrary to the weight and preponderance of the evidence as to be manifestly wrong and unjust. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

Contentions 5, 6, and 7 assert the testimony of Drs. Suggs, Curry and Blomquist was hearsay and entitled to no weight. These doctors were medical experts and never treated or examined plaintiff. As noted Dr. Blomquist examined plaintiff's exhibits 20, 21, and 22 (electrocardiograms of plaintiff) and testified therefrom he found no evidence of myocardial insufficiency, traumatic damage to the heart or of total disability of the heart. Dr. Suggs testimony was in answer to hypothetical questions.

Dr. Curry testified from X-rays which he did not take and which were not introduced into evidence. The record reflects that prior to trial defendant asked to examine all of plaintiff's medical reports, X-rays etc.; that the trial judge permitted defendants' doctors to examine same in the court room prior to trial; that these were the records and X-rays which Dr. Curry and others to some extent were asked about. Assuming such testimony hearsay and not admissible, the jury from the ad-

missible evidence had the right to believe plaintiff was not injured as severely as he asserted, or that his injuries were not as a direct result of the September 1969 collision. The jury's answers are not against the great weight and preponderance of the admissible evidence.

Affirmed.