Valton DAVIS, Appellant,

v.

J. H. ROSE TRUCK LINES, INC., et al., Appellees.

No. 17209.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Jan. 25, 1979.

Ronald N. Etzel, Houston, for appellant.

Talbert, Giessel & Stone, Henry P. Giessel, Tekell, Book & Matthews, William C. Book, Jr., Houston, for appellees.

PEDEN, Justice.

Valton Davis complains that a judgment awarding him $12,500 in damages for injuries received in a truck collision was manifestly too small. Defendant J. H. Rose Truck Lines, Inc. judicially admitted liability for the accident. The question of whether Davis was injured as a result of the accident (answered in the affirmative by the jury in the first special issue) was closely contested. We affirm.

The accident occurred on Wednesday, February 14, 1973, and Davis returned to work that Friday. He testified that a few days after the accident he began experiencing pain and stiffness in his neck, but it didn't start bothering him for a month or two after the accident, when the neck pain intensified, his left arm began going numb, his grip weakened, and he began to have severe headaches. He said he kept working because he was paid on a percentage and had a family to support. It was on June 4, that he saw a doctor. His family physician, Dr. Mathis, examined x-rays he had made, then sent him to Dr. Angel, a neurosurgeon, who performed a complete physical and neurological examination. Mr. Davis was admitted to the hospital on June 10, where he had a cervical myelogram. The diagnosis was degenerative disc disease and osteoarthritis. Dr. Angel performed a cervical fusion on June 15, 1973. He testified that he released Davis to return to work on August 20, 1973, but that Davis came back to see him in June, August, and September of 1974, complaining of pain and soreness in his neck and shoulders.

When he returned to work on August 20, 1973, Davis passed an Interstate Commerce Commission physical examination. He began performing his regular duties, although he says his neck hurt then and still hurts all the time. He testified that it bothers him continually, but he said that after Dr. Angel dismissed him on August 20, 1973, it was not until March of 1977 that he went back to Dr. Angel. His explanation was that Dr. Angel said it was something that was going to take time to get over. When working, he must rest often, and the pain interferes with his hobbies of hunting and fishing. He said he has never been free of pain since the operation.

Ernest Long worked with Davis as a truck driver in 1973 and is now his supervisor. He testified that when Davis returned to work after his surgery, he could no longer make long runs without stopping and resting. Long said he now gives Davis time to rest between trips instead of sending him right out again; he seems to need more rest. On cross-examination, Long testified that he believes the first time he heard any complaints from Davis about his neck was after the operation. He explained that he didn't see Davis often before the operation.

Mrs. Davis testified that since the collision, her husband is not the same. He tires more easily, doesn't sleep or eat well, and his nerves are bad. He complains of pain in his head, neck, back, shoulders and arms.

Two expert witnesses were called. The first, Dr. Angel, testified to finding of muscle spasm in the cervical area and weakness in the left hand and arm before the operation. In his opinion the accident was most likely the cause of Mr. Davis' pain, and he predicted that Davis will continue to have pain. He admitted on cross-examination that he had treated other patients, with conditions and symptoms like those of Davis, who had not been in an accident. There was evidence suggesting that the injury to Davis might have occurred in an

incident on April 1, 1973, but the jury resolved that issue in favor of Davis by its answer to the first special issue. Mr. Davis' family physician, Dr. Mathis, testified that it was not medically possible for a person with a ruptured disc as a result of an accident to wait four months before consulting a doctor; that didn't make sense to him. He said that a person can develop the symptoms of a ruptured disc without any specific event or trauma. Defendants introduced in evidence a written statement made by Mr. Davis on March 7, 1973 saying "I was not hurt in any way in this accident." Mr. Davis explained by saying he had no idea the stiffness in his neck was related to the collision and felt he was lucky to get out of the truck with his life; at the time the statement was made, his stiff neck was a minor thing.

In his only point of error, Davis asserts that the trial court erred in overruling his motion for new trial because the amount of damages awarded was manifestly too small. Rule 328, Texas Rules of Civil Procedure, provides that new trials may be granted when the damages are manifestly too small or too large.

In awarding damages, the jury was instructed that it could consider the elements of physical pain and mental anguish in the past, physical pain and mental anguish which, in reasonable probability he will suffer in the future, physical impairment, loss of earnings in the past, and hospital and medical expenses in the past. Davis' actual damages were shown to be $2500 in lost wages and $911.00 in medical expenses for a total of $3,411, so the jury award of an additional $9,089 is attributable to the elements of pain, anguish and physical impairment.

Matters of pain and suffering are necessarily speculative, and it is peculiarly within the province of the jury to set the amount of such damages. *Ruffo v. Wright*, 425 S.W.2d 663 (Tex.Civ.App.1968, no writ). Complaints that a verdict is inadequate are great weight points. 4 McDonald, Texas Civil Practice 280, New Trial § 18.15 (1971). We have examined the entire record in this case.

From the date of injury in February until June, Mr. Davis sought no medical attention. Following his release from Dr. Angel's care in August of 1973, Davis said he did not visit the doctor again until some four years later. Dr. Mathis testified that Davis had seen him a number of times for minor complaints prior to the accident. From this evidence the jury was entitled to conclude that although Davis was experiencing some discomfort, his pain was not great. Moreover, after Davis' return to work, he had not since been absent from the job because of pain or discomfort associated with his injury. Both Davis and his wife testified as to his pain, but jurors are not required to believe a witness, particularly in testimony about subjective matters such as pain, even though his testimony is neither impeached nor contradicted. This court has the power to reverse where the finding of the jury is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust, but we are not authorized to substitute our judgment for that of the jury simply because we might have reached a different conclusion on the facts. *Blackmon v. Piggly Wiggly Corp.*, 485 S.W.2d 381, 384 (Tex. Civ.App.1972, writ ref'd n.r.e.).

The judgment of the trial court is affirmed.