**Flora L. MILLS, Appellant,**

v.

**Judith R. JACKSON, Appellee.**

**No. 2–85–072–CV.**

Court of Appeals of Texas,
Fort Worth.

June 19, 1986.

Law Office of Wallace Craig, P.C. and Wallace Craig, Fort Worth, for appellant.

McBryde & Green and James G. Bennett, Fort Worth, for appellee.

Before JOE SPURLOCK, II, HILL and ASHWORTH (Retired, Sitting by Assignment), JJ.

## OPINION

JOE SPURLOCK, II, Justice.

This is an appeal from a personal injury case involving an automobile accident. Flora L. Mills, appellant, alleged that as the result of the collision between her car and that of Judith R. Jackson, appellee, she sustained back injuries including an injured cervical disc. Appellant claimed $249,-553.42 in damages for past medical expenses, past and future pain and suffering,

past lost wages, and future lost earning capacity. The jury awarded appellant $10,625. Appellant is claiming that the amount of this judgment is so small and inadequate that it is manifestly unjust and contrary to the overwhelming weight and preponderance of the evidence presented at trial.

We affirm the judgment of the trial court on the amount of damages awarded.

Appellant presents five points of error. In her first point of error, appellant claims that the trial court abused its discretion by failing to consider handwritten notations made in the margin of the jury's verdict which gave a breakdown of amounts awarded for separate damage elements under the special issue for total damages. In points of error numbers two and four, appellant contends the amounts awarded by the jury in its handwritten notations for the various elements of damages in this case are against the great weight and preponderance of the evidence and are so manifestly small and inadequate that a new trial should be awarded under TEX.R.CIV.P. 328. In points of error numbers three and five, the appellant asserts that the total amount of damages awarded by the jury in its answer to the special issue on damages is against the great weight and preponderance of the evidence presented at trial and is so small and inadequate as to be manifestly unjust.

Judith R. Jackson, appellee, filed four cross-points of error. In her cross-points one and two, appellee contests the admission into evidence of a computer summary of appellant's medical expenses and of a doctor's opinion testimony on the reasonableness and necessity of the expenses set forth in the computer summary. In cross-points three and four, appellee challenges the inclusion of damages for future pain and suffering and future loss of earning capacity in the special issue for total damages as these elements of damage were not properly pleaded by appellant.

The collision between the cars of the appellant and appellee took place on the morning of July 15, 1980 in the middle of an intersection in Tarrant County. Both automobiles sustained minor damages to their front ends and both were driveable after the collision. Neither party complained of any injuries at the time of the accident and no ambulance was called.

On the evening of the accident, appellant left her job as a bartender early to seek attention at a hospital emergency room for pain in the back of her neck and a slight dizziness. From the day of the accident until the trial, appellant made numerous visits to doctors complaining of back pains and she was hospitalized on four occasions for reasons relating to her alleged back problems.

There was no objective evidence of any injury to appellant's back until May 4, 1982. On that date, according to Dr. Thomas Barker, there were the first signs of radicular or nerve root pain. Appellant was hospitalized for lower back surgery from September 9 to 17, 1982 to repair a herniated disc. Appellant claims that her medical bills for her back problems since the accident have totalled to $15,615.42. Appellant requested damages of $125,000 for her past and future pain and suffering. Appellant also claims that her injury resulted in lost earnings of $9,500 and its permanent nature would reduce her earning capacity in the future by $100,000.

The jury found that appellant did sustain "an injury" that was a result of the negligence of both parties in this lawsuit. The jury held that 80 percent of the negligence of this accident was attributable to the appellee. In Special Issue No. 7, the jury was asked only one question on damages—to determine what total sum of money would compensate appellant for her injuries.

For clarification of discussion upon the matter of damages, a photo duplicate of Special Issue No. 7 as given in the court's charge along with the jury's answer is provided below. The handwritten notations in issue in this case are found in the right-hand margin of this special issue along side the elements of damages that the jury was instructed to consider.

ISSUE NO. 7

Find from a preponderance of the evidence what sum of money, if any, if paid now in cash, would fairly and reasonably compensate          Flora F. Mills for her          injuries, if any, resulting from the occurrence in question.

Consider the following elements of damages, if any, and none other.

(a)  Physical pain and mental anguish in the past.      $1,333.00

(b)  Physical pain and mental anguish that, in          — 0 —
     reasonable probability, she will suffer in
     the future.

(c)  Loss of earnings in the past.                      $4,000.00

(d)  Loss of earning capacity that, in reasonable       — 0 —
     probability, she will sustain in the future.

(e)  Medical expenses in the past.                      $5,292.00

You are to consider each element of damages separately, so as not to include damages for one element in any other element.

Answer in dollars and cents, if any.

ANSWER: $   10,625.00

In her first point of error, appellant asserts that the trial court abused its discretion by failing to consider the handwritten notations in the margin of the verdict as a part of the jury's response to the special issue on damages.[1] The question presented by appellant is whether these notations constitute a part of the jury's answer and thereby become a part of the verdict. If these handwritten notations on the separate elements of damages in this case can be considered as part of the verdict, then the appellant argues that each is manifestly too small and inadequate and each is reviewable on appeal.

This court holds that the handwritten notations in the margin of the jury charge do not constitute conclusive proof as to how the jury arrived at its total damages answer. *See Richardson v. Walters*, 311 S.W.2d 268, 270 (Tex.Civ.App.—Fort Worth 1958, no writ). As a consequence, there was no abuse of discretion by the trial court in not considering these notations and the separate elements of damages indicated by these notations cannot be considered on appeal.

The issue presented to the court in the *Richardson v. Walters* case is nearly identical to that presented in this point of error.

1. Prior to the submission of this charge to the jury, appellant had requested that each element of damages be addressed separately in individual special issues. The trial court overruled this request. Under TEX.R.CIV.P. 277, the trial court has discretion of whether to submit separate questions with respect to each element of a case or whether to submit issues broadly. The exercise of discretion by the trial court in determining whether it should submit separate questions with respect to each element of the case or submit issues broadly should not be overturned unless there is a clear showing of abuse. *DeAnda v. Home Ins. Co.*, 618 S.W.2d 529, 534 (Tex. 1980). Appellant in this appeal, however, does not argue that the charge was overly broad, but instead contends that the notations addressing these elements of damage be considered as part of the verdict to be reviewed.

In *Richardson,* the jury charge contained a broad special issue on damages incorporating six distinct damage elements but only providing for one answer as to the total amount of damages to be awarded. 311 S.W.2d at 269. Some member of the jury had written in the margin of the charge "none" besides four of the damage elements and certain dollar amounts besides the other two elements. The handwritten notations added to equal the total that the jury awarded in its answer to this special issue. In ruling on the issue of whether these handwritten notations could be considered on appeal, Chief Justice Massey wrote:

> We are of the opinion that the notations tend to warrant the conclusion [that the jury elected to provide awards for only certain elements of damages in reaching its answer on total damages], but we are of further opinion that as evidence it is not such as constitutes in and of itself proof to be given cognizance by the court. Furthermore, we are of the opinion that if it should be given consideration as evidence, it would certainly not amount to conclusive proof that the jury, as part of its unanimous act, arrived at its answer by adding the two sums together.

*Richardson,* 311 S.W.2d at 270. Chief Justice Massey went on to hold:

> From what we have already said, it follows as a matter of course that there is no proof of exactly which elements the jury took into consideration in arriving at the answer it returned. We cannot speculate upon how the jury arrived at the answer, nor can we assume that it found damages as to some elements and none as to others, or that it found some damages as to each element.

*Id.*

In the case before this court, it is equally clear that there is a strong inference that the handwritten notations addressing the separate elements of damage were the basis for the jury's total damage award as they add up to equal this total. Nonetheless, it would be speculation on our part

to assume that the notations represent the jury's actual answers. At most, the handwritten notations in the jury charge in this case represent the "mental process" by which the jury reached its verdict. The mental process by which the jury determined the amount of the verdict is ordinarily not cognizable by an appellate court. *Johnston Testers v. Rangel,* 435 S.W.2d 927, 933 (Tex.Civ.App.—San Antonio 1968, writ ref'd n.r.e.). The jury's reasons for reaching a particular verdict, as noted by the jury in an a handwritten footnote notation to their verdict, are irrelevant, at least in the absence of some overt act of misconduct. *First National Bank in Dallas v. Zimmerman,* 442 S.W.2d 674, 678 (Tex. 1969).

In support of her contention that the handwritten notations are part of the verdict, appellant cites *Wanda Petroleum Co. v. Reeves,* 385 S.W.2d 688 (Tex.Civ.App.—Waco 1964, writ ref'd n.r.e.). In *Wanda,* the jury failed to fill in the blank provided for the special issue on damages. Instead, handwritten notations were entered on the margin of the charge next to the instructions under the damage issue. Additionally, a conflicting notation on the damages to be awarded was made by a member of the jury on the special issues answer sheet below the foreman's signature. The Texas Court of Appeals in Waco held that the jury's responses were so ambiguous that a judgment could not be entered on the verdict and a new trial was ordered. Appellant claims that because the appellate court in *Wanda* considered both sets of handwritten notations on the charge and the answer sheet to be "answers," then the handwritten notations in this case should also be treated as "answers."

■ We find the facts in *Wanda Petroleum Co. v. Reeves* clearly distinguishable from those in this case. In *Wanda,* there was no answer at all made in the space provided for the special issue on damages. Therefore, the Waco Court looked for other notations on the charge and special issue answer sheet. They found the jury's responses in those other handwritten nota-

tions too ambiguous to allow them to enter a judgment. The *Wanda* case may be precedence for a court to consider a jury's handwritten notations in the charge where the jury failed to provide an answer to a special issue on damages. The *Wanda* case, however, does not stand for the proposition that such handwritten notations may be considered as part of the verdict *in addition* to the jury's answer which is otherwise clearly provided. In the case before this court, the jury entered an unambiguous answer to the requested special issue on total damages. This court therefore has no reason to examine the handwritten notations of some juror in the margin of the charge made in apparent response to issues not requested. A special issue finding on an issue that was not submitted by the court has no legal effect and may be disregarded as surplusage. *Collins v. Brown*, 279 S.W.2d 627, 629 (Tex.Civ.App. —San Antonio 1955, no writ).

We hold that the trial court did not abuse its discretion in disregarding the handwritten notations in the margin of the charge. Consequently, this court will not consider the notations as responses to the unasked questions on separate elements of damage in evaluating the adequacy of the damage award in this case. Point of error number one is overruled. Appellant's points of error numbers two and four are also overruled because they require this court to consider the responses found in the handwritten notations.

In her third point of error, appellant claims that the jury's verdict is contrary to the legal standard established by TEX.R. CIV.P. 328 insofar as the total amount of damages awarded is so manifestly small and inadequate as to be inequitable. In point of error number five, appellant contends that the judgment entered pursuant to the jury's verdict is contrary to the great weight and preponderance of the evidence presented at trial as to the total amount of damages that should have reasonably been awarded. We will address these two points of error together because a complaint that the verdict is inadequate is but a special example of the contention that the findings are contrary to the great weight and preponderance of the evidence. *Davis v. J.H. Rose Truck Lines, Inc.*, 578 S.W.2d 421, 423 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ); 4 R. MCDONALD, TEXAS CIVIL PRACTICE IN DISTRICT AND COUNTY COURTS sec. 18.15 (rev. 1984).

Under TEX.R.CIV.P. 328, new trials may be granted when the trial court determines that the jury's award for damages is manifestly too small or too large. In reviewing a point of error asserting that a finding is "against the great weight and preponderance" of the evidence, the appellate court has a duty to weigh and consider all the evidence, both the evidence which tends to support the verdict and that which does not, and to set aside the judgment and remand the case if after such consideration the appellate court should conclude that the verdict was so contrary to the overwhelming weight of all the evidence as to be manifestly unjust. *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). This is true even though the finding is supported by more than a scintilla of evidence and even though reasonable minds could differ about the conclusion to be drawn from the evidence. *Ford Motor Co. v. Nowak*, 638 S.W.2d 582, 585 (Tex.App.— Corpus Christi 1982, writ ref'd n.r.e.). The burden is on the complaining party to show that the verdict is contrary to the overwhelming preponderance of the evidence. *Royal v. Cameron*, 382 S.W.2d 335, 339 (Tex.Civ.App.—Tyler 1964, writ ref'd n.r. e.).

■ An appellate court will not disturb a judgment rendered upon a jury verdict on damages unless there are circumstances tending to show that it was the result of passion, prejudice or other improper motive, or that the amount fixed was not the result of a deliberate and conscientious conviction in the minds of the jury and the court, or was so excessive or inadequate as to shock the sense of justice in the minds of the appellate court. *Blair v. Buksnys*, 521 S.W.2d 652, 655 (Tex.Civ.App.—San Antonio 1975, no writ). The appellate court is

not authorized to substitute its judgment for that of the jury simply because the members might have reached a different conclusion on the facts. *Badger v. Symon,* 661 S.W.2d 163, 166 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.).

Absent proof of bias or prejudice on the part of the jury, the appellate court must view the evidence on damages in the light most favorable to the appellee and indulge every legitimate conclusion favorable to appellee which might have been drawn from the facts proved. *Walker v. Missouri Pacific Railroad Company,* 425 S.W.2d 462, 465 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). An appellate court will reverse the judgment of the trial court on damages only if the award falls below a rational appraisal or estimate. *Walker,* 425 S.W.2d at 465.

Appellant was allegedly injured in a car collision that took place in the middle of an intersection in Tarrant County on the morning of July 15, 1980. Appellee was on her way to an interview and failed to heed a red light. Appellee approached the intersection at about 30 miles per hour, but she had slowed down and swerved to miss another car before hitting appellant's car in the middle of the intersection. The cars came to rest at about the same point as where they initially collided. Appellant's car had damage to the left fender, the hood, the grill, and the front bumper. Appellee's car had damage to her right fender and a slight dent around the right headlight, though the headlight itself was not broken. Both cars were driveable after the accident and no tow-truck was called.

Immediately following the collision, appellant had both hands on the steering wheel and both of her daughters were unharmed and in place, even though none of them were wearing their seat belts. Appellant made the call to the police and made no complaints of physical injury to either appellee or the investigating police officer. Appellee received no injuries even though she was not wearing her seat belt either. No ambulance was called as a result of this accident. After the collision, appellant took her daughters to school and then returned to the scene of the accident.

On the night of the accident, appellant left her job as a bartender early to go to the emergency room of a nearby hospital. She complained of a headache, a knot in her neck, pains from her neck to her foot and a slight dizziness. The x-rays taken showed a normal spine and the emergency room doctor diagnosed the injury as a sprain and prescribed Valium and Tylenol # 3.

Appellant's pains allegedly persisted and she saw a number of doctors in July and August. From August 13 to August 21, 1980, appellant was admitted to All Saints Episcopal Hospital by Dr. Warren Wilson, a neurosurgeon, for tests. While in the hospital, x-rays were performed and an electromyogram (EMG) test was taken. Dr. Ernest Holt testified that the x-rays showed no evidence of any injury to appellant's back. No evidence was presented concerning the results of the EMG test. During this first hospital visit, appellant was also given therapy, heat pads for her back, massages, and painkillers.

Appellant was readmitted to All Saints Hospital from September 22 to October 6, 1980 by Dr. Wilson. During this stay, another EMG test was performed and appellant received more physical therapy and painkillers. Dr. James Garrison testified that the EMG examination showed no evidence of any nerve root damage to appellant's lower spine. He also stated that evidence of nerve root damage if it existed should have been apparent by three to four weeks after the accident. Appellant also saw Dr. Thomas Barker for the first time during this hospital visit. Dr. Barker is board certified in Neurology, Psychiatry, and Electroencephalography. He testified that at the time of this first visit he thought her low back pain was a result of the automobile accident, but in addition he found that she was suffering from psychotic reactive depression and that there was some psychological overlay to her chronic low back pain. Dr. Barker determined that her depression was related to her personal

family problems as well as her chronic back pain and had her moved to the Psychiatric Unit for psychotherapy and depression medication treatments.

From October 1980 through July 1981, appellant continued to see a number of doctors about her back problems. Dr. Barker saw appellant for a follow-up visit on November 10, 1980, at which time he did some psychotherapy and prescribed a muscle relaxant and a mild tranquilizer. After this visit, Dr. Barker released appellant to work without any restrictions or limitations. He also signed an insurance form stating that appellant's complete recovery was probable. Dr. Barker next saw appellant on January 29, 1981 for various physical complaints. He showed her some neck exercises and discussed her medication. Dr. Barker did not see appellant again until May 4, 1982.

Appellant was readmitted to All Saints Hospital from August 9 through August 13, 1981 by Dr. Jack McCallum for more tests. Dr. McCallum, a neurological surgeon, performed a general physical and neurological examination of appellant but found no abnormalities and diagnosed appellant to have back and neck pain of uncertain etiology. Dr. Joseph Gaines, an orthopedic surgeon, also saw appellant at this time and testified that after a complete physical and neurological examination, he found no objective evidence, based on medical probability, of nerve root compression or impingement or of a ruptured, herniated or protruded disc in appellant's neck or lower back. Dr. Gaines examined appellant again on March 23, 1982, but found very minimal medical disability relating to appellant's back problem and placed no limitations or restrictions on her employment activities.

Appellant returned to see Dr. Barker on May 4, 1982. Dr. Barker testified that it was at this time that appellant first began to show objective signs of an actual ruptured disc. Appellant was subsequently admitted to Harris Hospital from September 9 to 17, 1982, where "lumbar laminectomy" surgery was performed on her lower back. Appellant made a follow-up visit to Dr. Barker on November 2, 1982, at which time she appeared to be doing well after surgery although she continued to complain of some pain, anxiety and tenseness.

Dr. Barker did not see appellant again until November 30, 1983, at which time he performed an examination at the request of her lawyer. In his report to her lawyer, Dr. Barker wrote: "she was advised not to sit or stand for prolonged periods, and to take frequent breaks during those activities. She should be able to lift up to 25 pounds frequently and without difficulty, but should not lift objects over 50 pounds. I would not consider her disabled for her previous occupation of bartender."

At the time of the car accident, appellant had worked as a bartender for the Ramada Inn since April 1980. She was paid $3.50 per hour and took home $250 to $400 in tips a week. After the accident, she missed a few days, but otherwise worked her regular hours for two or three weeks in July and August of 1980. After her first hospital stay in August, she returned to work through September. After her second hospitalization in October, it appears that she worked through December 31, 1980.

In January 1981, appellant was unemployed and she filed applications for welfare benefits with the Texas Employment Commission representing that she was "ready, able, and willing to work." Appellant testified that from January to May 1981 she applied for a variety of jobs, including work as a bartender, waitress and grocery store clerk. In June 1981, she was hired as a bartender at the Bedford Holiday Inn. In her job application for this position, she represented that she had no physical limitations. The job paid $3.75 per hour plus tips.

At trial, appellant represented that she was unemployed from August 8, 1981 through June 1982. Appellee, however, presented evidence at trial that forced appellant to admit that she continued to work for the Bedford Holiday Inn through July 1982. She lost her job at the Holiday Inn in July for lack of cooperation and insubor-

dination. Her supervisor, Joe Adi, testified that he had no recollection of her complaining about back pains or of any missed work because of back or neck problems. From August 1982 through March 1983, appellant filed for unemployment compensation with the Texas Employment Commission representing that she was ready and able to work. During this period, she applied for a variety of jobs, such as bartender, cocktail waitress, checker, meat wrapper, sales clerk, and office worker.

Appellant's argument in her third and fifth points of error is that the jury's total damage award fails to bear any relationship to any rational appraisal or estimate of the proven damages. According to the appellant, the award was grossly inadequate when compared to the total medical expenses incurred, the lost wages, and the permanent disability and discomfort. Appellant particularly emphasizes that though the jury found her to have been injured, the $10,625 damage award did not even cover the $15,615.42 in medical costs proven at trial. Appellant contends that once the jury had determined that she had sustained an injury, they had to accept the expert testimony as to the extent of these injuries.

The amount of damages in a personal injury case cannot be measured by a mathematical yardstick. Each case must be measured by its own facts, and considerable discretion and latitude must necessarily be vested in a jury. *Rosenblum v. Bloom,* 492 S.W.2d 321, 325 (Tex.Civ.App.—Waco 1973, writ ref'd n.r.e.). While the jury cannot ignore the undisputed acts and arbitrarily fix an amount neither authorized nor supported by the evidence, *Horn v. State Farm Ins. Co.,* 567 S.W.2d 266, 268 (Tex.Civ.App.—Tyler 1978, no writ), in cases of automobile accidents, it is for the jury to evaluate the severity of the collision and the likelihood that a particular plaintiff would or would not have suffered any injuries. *Blount v. Earhart,* 657 S.W.2d 898, 902 (Tex.App.—Tyler 1983, no writ).

The jury's evaluation of the severity of a car collision and the extent of plaintiff's resulting injuries must necessarily be based in a large part upon the appearance and demeanor of the witnesses at trial and the weight and credibility given their testimony. It is settled law that the jury may determine the credibility of any of the witnesses and the weight to be given their testimony. *Hulsey v. Drake,* 457 S.W.2d 453, 460 (Tex.Civ.App.—Austin 1970, writ ref'd n.r.e.). Juries may disbelieve any witness even though he is neither impeached nor contradicted, they may believe one witness and not others, and they are not required to depend on evidence from a single source. *Blackmon v. Piggly Wiggly Corporation,* 485 S.W.2d 381, 384 (Tex.Civ. App.—Waco 1972, writ ref'd n.r.e.). Furthermore, juries may accept or reject, in whole or in part, the opinion testimony of physicians and juries may accept lay testimony over that of experts. *Blackmon,* 485 S.W.2d at 384.

The case presented by appellant at trial depended largely on the testimony of appellant and upon her subjective complaints. None of the doctors who examined appellant from July 15, 1980 up until May 4, 1982, found any *objective* evidence that she had suffered back injury as a result of the car accident. In addition, there was some evidence to show that her back problems were at least partially associated with psychological problems unrelated to the car accident.

The only doctor to find any evidence of damage to a disc in appellant's lower back was Dr. Barker, and this was not until almost two years after the accident. Dr. Barker was the only doctor to testify that this back injury was caused by the automobile collision. The jury was also able to consider Dr. Barker's testimony that he had released appellant in November 1980 without any work restrictions and with a prognosis of full recovery. The jury was free to reject all or part of Dr. Barker's testimony concerning his opinion on the causation of appellant's back injuries, the extent of her pain and suffering, and the nature of her disability.

The jury also had a right to believe that the car accident on July 15, 1980, was of a minor nature and could not have reasonably caused the lower back problems that resulted in surgery in September 1982. The collision only caused minor damages to both cars, which were both driveable after the accident. Though none of the parties involved in the collision were wearing seat belts, including two minor children, appellant is the only one among them who claims to have sustained any injuries.

Though the jury did find that the appellant received "an injury" as a result of the collision in question, the jury did not make any explicit finding that the appellant sustained a herniated or ruptured disc as a result of this accident. While the jury in this case clearly did not award the entire $15,615.42 in medical damages claimed by appellant at trial, the jury was not compelled to find that all of the medical expenses claimed by the appellant were reasonably related to the collision. There was sufficient evidence at trial to show that the medical expenses up until November 1980 amounted to approximately $5,200, when Dr. Baker first released appellant with the prognosis of full recovery. Any reasonable trier of fact could have found from the evidence presented in this case that the medical expenses associated with appellant's lower back surgery in September 1982 were not a result of her car accident in July 1980.

The jury's verdict appears consistent with a finding that appellant was injured, but was not injured to the extent claimed by her. Evidence presented at trial clearly showed that appellant was either employed or ready, willing, and able to work from January 1981 through March 1983. Furthermore, the jury was entitled to consider the inconsistencies and contradictions in appellant's testimony concerning her lost past wages and the degree of her disability in assessing the extent of her damages related to past and future lost earnings and past and future pain and suffering.

After considering the whole record, this court cannot say that the answer of the jury to the special issue on damages of which the appellant complains is so against the overwhelming preponderance of the evidence as to be manifestly unjust or clearly wrong. There are no circumstances in this case tending to show that the jury finding on damages was the result of passion, prejudice or any other improper motive. Furthermore, the record does not indicate that the amount of damages fixed was anything other than the result of a deliberate and conscientious conviction in the minds of the jury, or anything less than a rational appraisal or estimate of appellant's damages. Finally, this court, after reviewing all the evidence, does not find the amount of the damages awarded in this case to be so inadequate as to shock the sense of justice in the minds of this court. Appellant's points of error numbers three and five are overruled.

Because of our holdings on appellant's points of error in this case, it is not necessary for us to consider appellee's cross-points of error. For the reasons above stated and considering the entire record, the judgment of the trial court is affirmed.