

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-07-002-CV

BROCK INDEPENDENT SCHOOL
DISTRICT

APPELLANT

V.

TONY BRIONES D/B/A WEST TEXAS
CONCRETE AND METAL
BUILDINGS, SAMUEL TREVINO
D/B/A SAM'S CONSTRUCTION

APPELLEES

------------

FROM THE 415TH DISTRICT COURT OF PARKER COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Brock Independent School District ("BISD") sued Appellees

Tony Briones d/b/a West Texas Concrete and Metal Buildings ("Briones") and

Samuel Trevino d/b/a Sam's Construction ("Trevino") (collectively "Appellees")

---

[1]*See* TEX. R. APP. P. 47.4.

for damages resulting from Appellees' installation of a roof in connection with a school construction project. A jury awarded BISD $519,771.00. In five issues, BISD argues that the trial court erred by submitting two instructions, that the jury's negligence apportionment finding and "No" answer to the contract-compliance question are against the great weight and preponderance of the evidence, and that the evidence is factually insufficient to support the jury's damages finding. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

BISD sought to build a new elementary and middle school in late 2001. It hired D.S.A., Inc. as a construction manager to assist with the bidding process and oversee the project. BISD hired Stuckey Architects, Inc. as the architect. Stuckey prepared a project manual for BISD setting forth the general and supplemental conditions and specifications for the project and instructions for placing bids on the project. BISD ultimately awarded each phase of the project to a different subcontractor, who contracted directly with BISD, the owner, as a trade contractor.

Burton Sandefur, a project manager for DSA, knew Briones from previous jobs and contacted him about the BISD project. Briones, who performs concrete and metal building construction, subsequently signed a contract with BISD in March 2002 to furnish equipment and labor to erect "all pre-engineered

2

metal building components and all structural steel," which included building new metal buildings and laying a new roof on an existing gymnasium. Briones's crew installed the roof overlay on the old gymnasium, but Briones subcontracted much of the rest of the work to Trevino, another contractor who performs metal building erection. The project manual called for a standing seam metal roof, and it required the manufacturer, RollCOM, to warranty the roof for weathertightness. BISD did not select RollCOM to furnish the metal roof until after BISD had entered into its contract with Briones.

Trevino's crew began constructing their portion of the project sometime between July and September 2002. Tom Weaver was the job superintendent at the time, followed by Drew Scott and Rowdy Hutchins. According to Sandefur, the superintendent was responsible for overall coordination and had no authority to change the project's specifications or deviate from the contract documents. There was evidence, however, that Weaver was "in charge" at the project site. Although the roof was supposed to be installed by laying and securing the panels from one end of the roof to the other, Weaver erroneously instructed Trevino's crew to install the roof by setting the panels at both ends of the roof and working towards the middle.

Errors in the installation of the roof installed by Trevino manifested sometime in the Spring of 2003 when DSA sought to have RollCOM issue its

3

warranty. RollCOM declined to issue the weathertightness warranty after its representatives inspected the roof and discovered that the roof did not fully comply with RollCOM's specifications. RollCOM inspected the roof a second time and once again found errors in its installation. BISD retained Exterior Consulting Innovations, Inc. ("ECI") to independently evaluate the roof. ECI counted 115 leaks and opined that the roof had not been installed in accordance with the specifications or the manufacturer's installation instructions. Sandefur acknowledged that the plans provided to the trade contractors in the bidding process did not include the RollCOM installation instructions, and Frank Trevino, Samuel Trevino's son, recounted that the "shop drawings" for the roof that Trevino's crew had were not as detailed as the RollCOM instruction manual, which he saw for the first time just two days before testifying at trial.

DSA gave Briones an opportunity to remedy the defects in the roof, but Briones was ultimately unsuccessful. In March 2004, BISD declared Briones in breach of his contract and terminated his right to complete the project. ECI opined that the roof was beyond repair and that BISD would have to install a new roof to correct the problems. Stuckey opined that a new roof or overlaying the roof with another roof layer would be needed to cure the problems.

4

BISD sued Briones and Trevino for breach of contract, breach of warranty, violations of the Deceptive Trade Practices Act ("DTPA"), and negligence. Briones and Trevino sued DSA, but the trial court granted DSA's no evidence motions for summary judgment as to both Briones's and Trevino's claims. In its charge to the jury, the trial court included an instruction that "the actions of DSA, Inc. are those of Brock Independent School District." The jury found that BISD, Briones, and Trevino were all negligent, apportioning 85% of the negligence to BISD, 10% of the negligence to Briones, and 5% of the negligence to Trevino. The jury answered "No" to the DTPA question and "No" to the question asking whether Briones failed to comply with his contract with BISD. The jury, however, answered "Yes" to the question asking whether Briones failed to comply with a warranty, and it awarded BISD damages in the amount of $519,771.00. BISD filed a motion for new trial, which the trial court denied. This appeal followed.

### III. SUFFICIENCY ARGUMENTS

In its third issue, BISD argues that the jury's damages finding of $519,771.00 is "not supported by the evidence" because it was "inadequate, contrary to the evidence, and had no rational basis."[2] In its fifth issue, BISD

_____

[2]Although BISD does not specifically state that the jury's damages finding is "against the great weight and preponderance of the evidence" (like in its

5

argues that the jury's "No" answer to the contract-compliance question is against the great weight and preponderance of the evidence.

## A.   Standard of Review

When a party challenges the factual sufficiency of a finding on an issue on which it had the burden of proof, it must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).  When reviewing an issue asserting that a finding is "against the great weight and preponderance" of the evidence, we must consider and weigh all of the evidence and set aside the finding only if the evidence is so weak or the finding is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.*; *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). The trier of fact is the sole judge of the credibility of witnesses and the weight

second and fifth issues), the relief that BISD prays for (that the trial court's judgment be reversed and that the case be remanded for a new trial) is consistent with the relief accompanying a determination that the evidence is factually insufficient to support a finding. *See Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401–02 (Tex. 1981) (op. refusing writ n.r.e.) (stating that when a court of appeals sustains a point or issue because the evidence is factually insufficient, it must reverse the judgment of the trial court and remand for a new trial).  We therefore construe BISD's third issue as challenging the factual sufficiency of the evidence to support the finding.

to be given to their testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116

S.W.3d 757, 761 (Tex. 2003).[3]

### B. Damages Finding

The jury generally has broad discretion to award damages within the

range of evidence presented at trial. *Gulf States Utils. Co. v. Low*, 79 S.W.3d

561, 566 (Tex. 2002); *Clary Corp. v. Smith*, 949 S.W.2d 452, 467 (Tex.

App.—Fort Worth 1997, pet. denied). A jury may not, however, arbitrarily

assess an amount neither authorized nor supported by the evidence presented

at trial. *Mills v. Jackson*, 711 S.W.2d 427, 434 (Tex. App.—Fort Worth 1986,

no writ). In other words, a jury may not "pull figures out of a hat." *Neiman-

Marcus Group, Inc. v. Dworkin*, 919 F.2d 368, 373 (5th Cir. 1990). When the

trial evidence supports a range of damages awards, as opposed to two distinct

options, an award within that range is an appropriate exercise of the jury's

discretion, and the reviewing court is not permitted to speculate on how the

jury actually arrived at its award. *Potter v. GMP, LLC*, 141 S.W.3d 698, 704

---

[3]BISD had the burden of proof on its breach of warranty claim. Considering our determination below that the entire damages award is attributable to BISD's warranty claim, we conduct our factual sufficiency review of BISD's damages argument pursuant to the standard of review articulated in *Dow Chemical Co.*, not pursuant to the standard of review used when a party without the burden of proof challenges the factual sufficiency of the evidence to support a fact finding.

7

(Tex. App.—San Antonio 2004, pet dism'd); *Mayberry v. Tex. Dep't of Agric.*, 948 S.W.2d 312, 317 (Tex. App.—Austin 1997, writ denied).

Here, BISD contends that it provided the jury with only two damages calculations—$1,027,205.45 and $898,011.73—and that these amounts were "based upon competitive bids that were submitted to complete the necessary replacement and repair work" of the roof and building.  But these were not the only figures before the jury.  A "Project Proposal Register," one of BISD's exhibits at trial, lists prospective bidders for the roofing project and the amounts of their respective bids.  Three of the contractors submitted base bids in the amounts of $493,314, $514,462, and $610,456.  Moreover, a May 24, 2004 bid proposal submitted by Lon Smith Roofing contains a bid to overlay the roof in the amount of $503,914 and a bid in the amount of $15,857 to "[r]emove leak damaged ceiling panels in [the] gym, and furnish labor and materials to install new panels as needed to match existing panels."  Although it is not necessary that we determine how the jury arrived at its damages finding, the combined total of Lon Smith Roofing's bids equals the jury's damages finding of $519,771.00.

Additionally, included within the $1,027,205.45 figure are amounts for "Construction Document preparation and construction administration (ECI proposal)"—$93,680.00—and "Rental of portable buildings"—$304,875.00.

8

Included within the $898,011.73 figure are amounts for "Added cost for weekend and out of school work to limit disturbance and learning"—$182,565.00—and the $93,680 ECI proposal. The jury could have concluded that these services were unnecessary, thus lowering each bid amount by the total of the deemed unnecessary services, bringing the totals that BISD claims were the only two damages calculations before the jury significantly more in line with the bids contained in the "Project Proposal Register."

BISD argues that Briones's failure to repair the roof was a continuing breach of warranty such that the appropriate time to measure damages for failure to repair is the time of trial. BISD's argument is unpersuasive because it provided written notice to Briones in March 2004 that it was declaring Briones "in breach of contract" and that it was terminating Briones's right to complete the contract. Damages for Briones's failure to repair cannot extend to the time of trial because BISD expressly prohibited Briones from performing any further repairs in March 2004.

Accordingly, BISD provided the jury with a range of damages awards, and it was within the jury's discretion to award BISD damages in the amount of $519,771.00—an amount that was not arbitrarily assessed. *See Potter*, 141 S.W.3d at 704. Having considered and weighed all of the evidence, we hold

9

that the jury's damages finding in the amount of $519,771.00 is not so weak or so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Dow Chem. Co.*, 46 S.W.3d at 242. We overrule BISD's third issue.

### C.    Compliance with Contract

The jury charge included the following question: "Did Tony Briones d/b/a West Texas Concrete and Metal Buildings fail to comply with the contract dated March 12, 2002, with Brock Independent School District?" The jury answered "No." BISD argues that the jury's answer is against the great weight and preponderance of the evidence because Briones agreed (1) to warrant his work per the project's plans and specifications and (2) to not hire a subcontractor to perform work on the project without prior written approval.

The evidence shows that RollCOM declined to issue its weathertightness warranty because the roof did not meet RollCOM's installation specifications. RollCOM observed after conducting its inspections that panels had not been hand crimped, incorrect fasteners had been used, and sealants were insufficient or missing, among other things. ECI also evaluated the roof and determined that it had not been installed in accordance with RollCOM's installation instructions or the specifications. ECI discovered numerous leaks inside and opined that a new roof would be needed to remedy the problems.

10

There was also evidence, however, that Weaver erroneously instructed Trevino's crew to install the roof by setting the panels at both ends of the roof and to work towards the middle. Weaver told the contractors to use three fasteners when installing the panels instead of four because they were short on material. There was evidence that Weaver was "in charge" at the project site and that he often informed the crews that the project was behind schedule, urging them to speed up their respective work. He even had the contractors work in the rain "several times." Briones testified that he is used to following a chain of command when at a project site, that a contractor cannot just say "no" to a superintendent, and that a person might get fired for going over the superintendent's head on an issue. Sandefur agreed that if a contractor had a question, then the person to see was the superintendent. Frank Trevino testified that Weaver answered questions posed by the contractors and that Weaver said there was no need for the contractors to talk to the architect because that was his job.

RollCOM requires that its roofs be installed by certified installers, but neither Briones's crew nor Trevino's crew had completed the certification prior to installing the roof. When Briones requested time to get his crew certified, Weaver told him that the project could not wait and that it needed to be completed.

11

Sandefur acknowledged that the plans provided to the trade contractors in the bidding process did not include the RollCOM installations instructions, and Frank Trevino recounted that the "shop drawings" for the roof that Trevino's crew had were not as detailed as the RollCOM instruction manual, which he saw for the first time just two days before testifying at trial.

Trevino's crew experienced complications when they started working on the project and roof: anchor bolts did not line up, purlins did not fit, the concrete was off square by four to six inches, and red iron was rusted. Part of the problems ultimately associated with the roof's installation were attributable to the seams not being tightly bundled against each other. Briones explained that the mechanical roof seamer (used to crimp the metal panels together) was

not made available until the entire roof had been installed.[4]  Vice grips, or a

"hand crimper," needed to install the roof were also not on the job.[5]

Regarding BISD's prior approval of Briones's intent to subcontract part of

the work to Trevino and his crew, Briones testified that he informed Sandefur

that he intended to use Trevino for part of the job before both his and Trevino's

crew arrived at the project site.  Sandefur said it was okay.

---

[4]Sandefur partially explained the standing seam roof and mechanical seamer as follows:

> You have – a standing seam roof has two – it's like a U.  And when you lay those panels down, there's a clip that stands up that's screwed to the purlin below it.  The two panels are supposed to bump one another.  This seam sealer is a mechanical – kind of like a can opener that sits over the top of it, if you will.  And when you turn it on, it's electric, and it rolls – it rolls the seam to where it rolls it over into itself which seals the roof.

[5]Sandefur explained a hand crimper as follows:

> In installing a standing seam roof, with the parts that come from the metal building component people, they send what they call a hand crimper, which looks like a big pair of vice grips, basically, with a – duck bill vice grips, if you will.  And you – the instructions are as you're installing those sheets, you line the sheets, set them over the – over the clips that are screwed to the purlins, and then you hand crimp the top metal and the bottom of [the] sheets that are approximately 30 foot or less. . . .  Then, basically, you don't need the seam sealer until you're nearly through with the roof.

13

The jury assessed the credibility of witnesses and the weight to be given to their testimony, which we may not disturb. Having considered and weighed all of the evidence, we cannot say that the evidence supporting the jury's "No" answer to the contract compliance question is so weak or so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Dow Chem. Co.*, 46 S.W.3d at 242; *see generally Fraser v. Baybrook Bldg. Co.*, No. 01-02-00290-CV, 2003 WL 21357316, at *2–3 (Tex. App.—Houston [1st Dist.] Jun. 12, 2003, pet. denied) (mem. op.) (holding evidence factually sufficient to support finding that contractor complied with agreement). Accordingly, we overrule BISD's fifth issue.

## IV. INSTRUCTIONS AND APPORTIONMENT FINDING

In its first issue, BISD argues that the trial court erred by instructing the jury that "the actions of DSA, Inc. are those of [BISD]." BISD contends that the instruction was improper because it misstated the law of agency, removed the question of agency from the jury, was not supported by the pleadings and evidence, and constituted a comment on the weight of the evidence. Related to its first issue, BISD argues in its second issue that, assuming the agency instruction was proper, the jury's 85% negligence apportionment to BISD finding is against the great weight and preponderance of the evidence. In its

14

fourth issue, BISD argues that the trial court erred by including a damages mitigation instruction because it was not supported by sufficient evidence.

A trial court must submit "such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX. R. CIV. P. 277; *Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex. 2002). When an instruction is given, the question on review is whether it is proper. *M.N. Dannenbaum, Inc. v. Brummerhop*, 840 S.W.2d 624, 631 (Tex. App.—Houston [14th Dist.] 1992, writ denied). An instruction is proper if it assists the jury, accurately states the law, and finds support in the pleadings and evidence. *See* TEX. R. CIV. P. 278; *In re Commitment of Almaguer*, 117 S.W.3d 500, 502 (Tex. App.—Beaumont 2003, pet. denied); *Williams*, 85 S.W.3d at 166. Rule 277 affords the trial court considerable discretion in deciding what instructions are necessary and proper. *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 451–52 (Tex. 1997). Indeed, a trial court is afforded even more discretion when submitting instructions than when submitting questions. *Wal-Mart Stores, Inc. v. Middleton*, 982 S.W.2d 468, 470 (Tex. App.—San Antonio 1998, pet. denied). Accordingly, we review the trial court's submission of instructions for an abuse of discretion. *In re V.L.K.,* 24 S.W.3d 338, 341 (Tex. 2000); *James v. Kloos*, 75 S.W.3d 153, 162 (Tex. App.—Fort Worth 2002, no pet.). A trial court abuses its discretion by acting arbitrarily, unreasonably, or without

consideration of guiding principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003). We will not reverse a judgment based on charge error in the absence of harm, which results if the error "probably caused the rendition of an improper judgment" or "probably prevented the petitioner from properly presenting the case to the appellate courts." TEX. R. APP. P. 44.1; *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 580 (Tex. App.—Austin 2007, pet. denied).

## A. "[T]he actions of DSA, Inc. are those of [BISD]" and Apportionment Finding

Appellees initially argue that BISD failed to preserve for review some of its arguments complaining of the trial court's instruction that "the actions of DSA, Inc. are those of [BISD]." Because BISD only objected that the instruction was a comment on the weight of the evidence and that there was no evidence that BISD "ratified or approved DSA's actions," Appellees contend that BISD waived its arguments that the instruction misstated the law of agency, prevented the jury from deciding disputed fact questions, and did not conform to the pleadings and evidence. We disagree.

The test for determining whether a party has preserved error in the jury charge is whether the party timely and plainly made the trial court aware of the complaint and obtained a ruling. *State Dep't of Highways v. Payne*, 838

16

S.W.2d 235, 241 (Tex. 1992); *see also* TEX. R. CIV. P. 274 (requiring a party objecting to a charge to point out distinctly the objectionable matter and the grounds of the objection); TEX. R. APP. P. 33.1(a). As explained below, each of BISD's arguments essentially complain that Weaver, DSA, or both were acting outside the scope of his or its actual or apparent authority when engaging in the negligent activity. Though not expressed as eloquently as its exhaustive appellate arguments, BISD's objection that it did not ratify or approve of DSA's actions comports with its arguments on appeal and timely and plainly made the trial court aware of its complaint. We will therefore consider BISD's argument in its entirety.

BISD couches its four arguments challenging the trial court's instruction in different terms, but the ultimate contention underlying each argument is the same—that it was error for the trial court to include the instruction because Weaver's or DSA's negligent activity (the erroneous instructions explaining how to install the roof) did not occur within the scope of Weaver's or DSA's actual or apparent authority.[6] BISD stresses that the contract documents clearly

_____

[6]Under BISD's argument that the instruction misstates the law of agency, it contends that there was no evidence that Weaver was within his actual or apparent authority as either a BISD or DSA agent "for any alleged roof installation instructions" and that there was no evidence conclusively establishing that "*every single act* committed by DSA was within the scope of its agency relationship with" BISD. [Emphasis added.]. Under BISD's argument

17

define DSA's authority and that there was no evidence that it extended DSA's or Weaver's authority so that either of them could direct Appellees' means, methods, techniques, and sequences for the construction work. Thus, according to BISD, because Weaver or DSA did not have the authority to instruct or direct the Appellees' manner or means, the trial court's instruction erroneously imputed Weaver's or DSA's outside-the-scope-of-authority negligent activity to BISD.

The record is clear that the jury also found Briones liable for breach of warranty and that it awarded BISD damages in the amount of $519,771.00. Although the $519,771.00 award is a lump sum total not broken down by the various causes of action, the entire amount of the award can be attributed to

that the instruction improperly removed the question of agency from the jury, it contends that there was conflicting evidence whether DSA or Weaver acted within their apparent authority when "allegedly directing [Appellees] on roof installation." Under BISD's actual and apparent authority arguments, it contends that the evidence did not conclusively establish that DSA or Weaver had actual or apparent authority as BISD's agents "for roof installation instructions." Under BISD's argument that the instruction was not supported by the pleadings and evidence, it contends that there was no evidence to support the trial court's instruction that *all* of DSA's acts were the acts of BISD. And under BISD's argument that the instruction was an improper comment on the weight of the evidence, it contends that the instruction presumed that DSA or Weaver were acting as BISD's agent *when the alleged negligent acts were committed* and that the instruction removed from the jury's consideration any evidence that DSA acted *outside* of its authority "when it allegedly exercised specific control over the performance of [Appellees'] work."

18

the jury's affirmative breach of warranty finding because the trial court rendered judgment for BISD against Briones for the full amount of the $519,771.00 award; the trial court did not reduce the award by any amount based on the jury's 85% negligence-apportionment finding.[7] The complained of instruction also did not factor into the jury's damages finding because the damages question specifically instructed the jury to "not reduce the amount, if any, in your answer because of the negligence, if any, that you have attributed to Brock Independent School District." No party challenges the breach of warranty finding, and we have affirmed the damages award above. Thus, the inclusion of the instruction that "the actions of DSA, Inc. are those of [BISD]" had no effect on the trial court's judgment, which rendered judgment for BISD on its breach of warranty claim for the full amount of the jury's damage award. For the same reasons, the jury's 85% negligence-apportionment finding likewise had no effect on the trial court's judgment. Accordingly, assuming that the trial court abused its discretion by including the instruction, the error was harmless. *See* TEX. R. APP. P. 44.1; *Tex. Disposal Sys. Landfill, Inc.*, 219 S.W.3d at 580. We overrule BISD's first and second issues.

### B.    Mitigation Instruction

---

[7]*See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 33.001, 33.012(a) (Vernon 1997 & Supp. 2007) (setting forth proportionate responsibility scheme).

BISD further argues that there was insufficient evidence to include a damages mitigation instruction in the jury charge. In arguing that the alleged error was harmful, BISD contends, "If the mitigation instruction had not been included in the charge, the jury would have followed the only calculations that it was given[,] and the damages award would have been based upon the evidence." Thus, according to BISD, the mitigation instruction must have caused the jury to award less damages because the finding is less than the only two damages calculations that were before the jury. Assuming without deciding that the trial court abused its discretion by including the mitigation instruction in the jury charge, we cannot conclude that the error was harmful because, as explained in our evidentiary sufficiency analysis of the jury's damages finding, the jury clearly arrived at its damages finding by adopting the amounts reflected in a contractor's bid to perform a roof overlay and to remove and replace the damaged ceiling panels in the gymnasium, which, in addition to BISD's proposed damages calculations, was one of a number of calculations in evidence. There is nothing to indicate that the mitigation instruction had any effect on the jury's damages finding or probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1. We overrule BISD's fourth issue.

## IV. CONCLUSION

Having overruled each of BISD's arguments, we affirm the trial court's judgment.

PER CURIAM

PANEL B:  HOLMAN, DAUPHINOT, and WALKER, JJ.

DELIVERED:  March 13, 2008