**Miriam HICKS, Appellant,**

v.

**Brian M. RICARDO, D.D.S., Appellee.**

**No. 01–91–00671–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

July 23, 1992.

Rehearing Denied Aug. 26, 1992.

Richard N. Laminack, Thomas W. Pirtle, Houston, for appellant.

M. Karinne McCullough, Robert L. Ramey, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and MIRABAL and PRICE[1], JJ.

## OPINION

OLIVER–PARROT, Chief Justice.

This is an appeal from a judgment in a dental malpractice suit. In six points of error, appellant, Miriam Hicks, argues the trial court abused its discretion by denying her motion for new trial. We reverse and remand the case for new trial.

---

1. Honorable Frank C. Price, former justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

## Summary of treatment

Appellant, Miram Hicks, sued appellee, Dr. Brian M. Ricardo, for negligent and grossly negligent dental care. Hicks was treated by Ricardo from 1984 until 1986. Prior to Hicks' initial visit with Ricardo, her family dentist, Dr. Fullenweider, had extracted four upper teeth and inserted a partial bridge to replace those teeth. According to Hicks, Fullenweider recommended that Hicks have a back tooth extracted. Hicks testified that she visited Ricardo for that purpose. Ricardo replaced the partial bridge installed by Fullenweider with a cantilever bridge in March of 1984. The cantilever bridge is cosmetically more appealing than a partial bridge. It is designed to make the patient's teeth look more like normal teeth. Approximately five months after the new bridge was installed, Hicks testified that she began to experience "swelling, infections, leakage, movement and crumbling of caps." In August of 1984, Ricardo attempted to patch porcelain that had fractured off of some Hicks' teeth that were part of the bridge. One year after the bridge was installed, Ricardo was again required to do repair work on the bridge and teeth. There was a fracture on the back part of the bridge and Ricardo attempted to fuse the area with cement. When the fusion did not work, Ricardo replaced the bridge and continued to work with fitting it during April and May of 1985.

After the new bridge was installed, Hicks again complained of similar problems she had experienced with the first bridge that Ricardo had installed. Ricardo testified that Hicks had ground the enamel off her front teeth. Ricardo further testified that he explained to Hicks that the use of a night guard was required to allow her front teeth to heal and to prevent her teeth from dying. The front teeth in effect were holding the bridge in place. Hicks testified that Ricardo told her that grinding her teeth would damage the bridge. However, Ricardo disputed Hicks' testimony that she had used the night guard as prescribed by Ricardo.

After several root canals between June of 1984 and July of 1986, Ricardo told Hicks she would need surgery on a tooth that he had performed a root canal on because of infection. At this point, Hicks obtained a second opinion from Dr. Harold Heuzsel who referred her to Dr. Sam Rogers.

Dr. Rogers testified that he began treating Hicks in 1986, and that the bridge was very loose, that the front teeth were fractured off at the gum line, and that there was basically only one tooth holding the bridge in place. Dr. Rogers made a modification to the bridge and did not remove it for cosmetic appearances. Dr. Rogers subsequently replaced six caps on Hicks teeth and repaired the fractured teeth.

## The jury award

In response to the comparative fault issues, the jury found 60 percent of the negligence attributable to Ricardo and 40 percent attributable to Hicks. In response to the damages issues, the jury awarded $5,000 for past physical pain and mental anguish, $1,000 for past physical impairment, $10,000 for medical care in the past, and $1,000 for future medical care. The jury awarded nothing for future physical pain and mental anguish, for past disfigurement, for future disfigurement, and for future physical impairment.

## Hicks' motion for new trial

After the return of the verdict, the trial court considered various posttrial motions. Relevant to Hicks' appeal is the trial court's consideration and ruling on her motion for new trial. In her motion for new trial, Hicks complained that, although the jury found compensable injury, the jury failed to award adequate damages. Hicks argued the jury's finding of $10,000 for past medical care was against the overwhelming weight of the evidence because the uncontroverted evidence showed that past medical expenses amounted to $13,-543.42. Hicks also argued the jury award of $1,000 for future medical care was against the overwhelming weight of the evidence because the uncontroverted evidence from expert testimony showed that future cost of medical care would be

$2,000. In addition, Hicks argued the jury's award for the remaining damages was inadequate and that an award of future medical expenses, while awarding zero for future pain and mental anguish, was against the greater weight and preponderance of the evidence.

## Standard of review

■ A trial court has wide discretion in denying a motion for new trial, and its action will not be disturbed on appeal absent a showing of an abuse of discretion. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex.1983). The standard of review depends on the complaint preserved by the motion for new trial. Sufficiency of the evidence challenges are governed by legal and factual sufficiency standards of review.

■ Only one standard of review is used in reviewing factual sufficiency challenges, regardless of whether the court of appeals is reviewing a negative or an affirmative jury finding or whether the complaining party had the burden of proof on the issue. *M.J. Sheridan & Son v. Seminole Pipeline*, 731 S.W.2d 620, 623 (Tex. App.—Houston [1st Dist.] 1987, no writ). The court of appeals must examine all the evidence, *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986), and having considered and weighed all of the evidence, it should set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

## Damages

■ In her first point of error, Hicks complains of the trial court's use of additur for past medical expenses, and in her second, third, fourth, and fifth points of error, Hicks argues the trial court abused its discretion by denying her motion for new trial because the jury's findings of "zero" with respect to past and future disfigurement, future physical impairment, and future pain and mental anguish are so against the great weight and preponderance of the evidence as to be manifestly

unjust. In her sixth point of error, Hicks complains of the inadequacy of the amount awarded for future medical expenses. Because we agree that the jury's failure to award damages for future pain and mental anguish is against the great weight and preponderance of the evidence, we will only address Hicks' fifth point of error.

The jury awarded Hicks damages for past but not future pain and mental anguish. Hicks contends that she is now a "dental cripple" as a result of the cantilever bridge. She argues the uncontroverted testimony shows the bridge caused teeth to fracture and crumble and ultimately to break off at the gum line and that she will in the future require a full upper denture and lose all of her remaining teeth.

■ Mental anguish is defined as "intense pain of body or mind ... or a high degree of mental suffering." *Cactus Drilling Co. v. McGinty*, 580 S.W.2d 609, 611 (Tex.Civ.App.—Amarillo 1979, no writ). Mental anguish is something more than mere worry, anxiety, vexation, or anger. *Id.* Mental suffering may be implied from injuries accompanied by physical pain, even without direct proof of either existence or cause. *Gerland's Food Fair, Inc. v. Hare*, 611 S.W.2d 113, 120 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). Damages for future mental anguish are recoverable only if there is a reasonable probability that they will be suffered in the future. *See City of Ingleside v. Kneuper*, 768 S.W.2d 451, 461 (Tex.App.—Austin 1989, writ denied).

■ In *Hammond v. Rimmer*, 643 S.W.2d 222 (Tex.App.—Eastland 1982, writ ref'd n.r.e.), Hammond was injured when his motorcycle was struck by an automobile driven by Rimmer. Hammond sued Rimmer on a negligence theory. The jury found 80 percent of the negligence attributable to Rimmer and 20 percent attributable to Hammond. In response to the damage issues, the jury awarded $5,000 for past pain and mental anguish, $12,000 for past loss of earnings, $4,000 for future loss of earning capacity, $3,500 for medical and hospital treatment, and awarded no dam-

ages for future pain and mental anguish. The sole issue on appeal was whether the jury's failure to find damages for future pain and mental anguish was against the great weight and preponderance of the evidence. In reviewing this issue the court adopted the following reasoning:

> If the plaintiff has objective symptoms of injury, i.e., a cut or laceration of his body as in this instance, and there is readily available testimony which the defendant could offer to refute such fact, plaintiff's evidence can not be disregarded by the jury when the defendant fails to refute it. On the other hand, if plaintiff's complaints are subjective in nature, i.e., headaches, which the defendant may not readily dispute, then a negative answer of the jury to the damage issue will not be disturbed when it rests upon the testimony of plaintiff alone.[2]

*Hammond*, 643 S.W.2d at 223–24. Matters of pain and suffering are necessarily speculative and it is peculiarly within the province of the jury to set the amount of such damages. *Davis v. J.H. Rose Truck Lines, Inc.*, 578 S.W.2d 421, 423 (Tex.Civ.App.— Houston [1st Dist.] 1979, no writ). There are no objective guidelines by which the court may measure the money equivalent of mental anguish, and the jury is allowed a great deal of discretion in fixing this amount. *Green v. Meadows*, 527 S.W.2d 496, 499 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). However, once it has been proved by objective evidence that an injury will continue adversely to affect plaintiff, the jury may not give a take-nothing verdict for future pain, suffering, and mental anguish. *Jones v. Wal–Mart Stores, Inc.*, 870 F.2d 982, 988 (5th Cir. 1989).

Our review of the record shows that Hicks suffered objective physical injuries as a result of the cantilever bridge. Hicks testified that after the bridge was installed, she began experiencing pain in her front teeth and swelling around her gum lines. As a result of infections she developed because of the bridge, Hicks continually suffered from fevers and flu-like symptoms. By April of 1985, Ricardo was required to replace the original bridge he installed in March of 1984. In June of 1984, and in July of 1986, Ricardo performed root canals on teeth that had developed infections because of the bridge.

Ricardo disputed Hicks' testimony of continued pain and problems with the bridge. He testified from his records that Hicks had gone as long as six months between appointments and that patients in pain on a daily basis come in the same day. At the time of trial, Hicks testified that she has a lingering problem with tenderness at the gum line, has no teeth, and has only steel posts and caps on her original top front six teeth as a result of the bridge.

Dr. Rogers, who began treating Hicks on an emergency basis in October of 1986, testified the bridge was very loose, the front teeth were fractured off at the gum line, and there was only one tooth holding the bridge in place. While he made modifications to the bridge, he did not remove it because of cosmetic concerns. Dr. Rogers testified that in his opinion, the bridge had caused Hicks' teeth to fracture off, resulting in the four root canals that he later performed on Hicks. Dr. Rogers also testified that Hicks can best be described as a "dental cripple," he expects her to have extensive work periodically, and she will probably in the future lose all her teeth and require a full upper denture.

Dr. Hauszel testified that he first saw Hicks in 1984, after the original cantilever bridge was installed by Ricardo. In Hauszel's expert opinion, the root canals and subsequent surgery performed by Dr. Rogers were all necessitated by the bridge. Hicks, in Dr. Hauszel's opinion, will need future dental treatment and the remainder of her teeth will probably not last the rest of her lifetime.

Obviously, the conflicting evidence as to the seriousness or extent of Hicks' condition would justify a very modest award by the jury, but it is inconsistent to find past mental anguish, as the jury did, but not

---

**2.** This rule was originally formulated in Justice Keith's concurring opinion in *Dupree v. Black-* *mon*, 481 S.W.2d 216, 221 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.).

future mental anguish, when the same circumstances that produced at least some of the previous mental anguish are likely to recur. *See Jones,* 870 F.2d at 989. Moreover, the jury awarded damages for future medical care. It is also inconsistent that there would be no future mental pain and mental anguish associated with the medical care that will be required to replace Hicks' teeth that in all probability she will lose. The record shows objective evidence that Hicks' injury as result of the bridge will continue to adversely affect her in the future. It is clear that Hicks' complaints are not subjective in nature, and thus could readily have been disputed by *Ricardo.* Based on Hicks' testimony and the expert testimony of Dr. Rogers and Dr. Hauszel, there is a reasonable probability that Hicks will suffer future mental anguish. Thus, we find the jury's failure to award damages for future pain and mental anguish is so against the great weight and preponderance of the evidence as to be manifestly unjust. The trial court abused its discretion by not granting Hicks' motion for new trial.

Hicks' fifth point of error is sustained.

The judgment is reversed and remanded for a new trial.