ACCEPTED
14-14-00411-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
6/10/2015 10:16:06 PM
CHRISTOPHER PRINE
CLERK

## No. 14-14-00411-CV

### IN THE COURT OF APPEALS
### FOR THE FOURTEENTH DISTRICT OF TEXAS

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
6/10/2015 10:16:06 PM
CHRISTOPHER A. PRINE
Clerk

**PAMELA WALKER,**
*Appellant,*

**v.**

**SUZANNE SCOPEL AND JUSTIN SCOPEL,**
*Appellees.*

On Appeal from Cause Number 12-DCV-200283
From the 268th District Court of Fort Bend County, Texas

### BRIEF FOR APPELLANT

### ORAL ARGUMENT REQUESTED

**REGINALD E. MCKAMIE, SR.**
TBN. 13686750
1210 Antoine Drive, Suite 100
Houston, Texas 77055
Phone: (713) 465-2889
Fax:    (713) 465-2894

**Counsel for Appellant**

i

## IDENTITY OF PARTIES AND COUNSEL

PLAINTIFF/APPELLANT:                         Pamela Walker

DEFENDANT/APPELLEE:                     Justin Scopel

COUNSEL FOR PLAINTIFF/APPELLANT:     Reginald E. McKamie, Sr.
Attorney at Law
1210 Antoine, Suite 100
Houston, Texas 77055

COUNSEL FOR DEFENDANT/APPELLEE:    IRESON & WEIZEL, PLLC
Lansford O. Ireson, Jr.
9720 Cypresswood, Suite 310
Houston, Texas 77070

PRESIDING JUDGE AT TRIAL:            Hon. Brady G.Elliott
268th District Court
Harris County, Texas
1422 Eugene Heimann Cir.
Richmond, Texas 77469

# TABLE OF CONTENTS

IDENTITY OF THE PARTIES AND COUNSEL ................................................................... ii

TABLE OF CONTENTS ............................................................................................... iii

INDEX OF AUTHORITIES ............................................................................................ iv

STATEMENT OF THE CASE........................................................................................... 1

ISSUES PRESENTED.................................................................................................... 2

STATEMENT OF FACTS ............................................................................................... 3

SUMMARY OF THE ARGUMENT.................................................................................... 7

ARGUMENT .............................................................................................................. 8

**A. The trial court erred in admitting photographs of extremely limited probative value that was substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury** ............. 8

**B. The jury was not at liberty to award no damages to Walker. The evidence that Walker suffered some amount of physical pain and mental anguish and physical impairment was undisputed**................................. 11

PRAYER ................................................................................................................ 14

CERTIFICATE OF SERVICE ....................................................................................... 15

CERTIFICATE OF COMPLIANCE ................................................................................. 15

APPENDIX ............................................................................................................. 16

# INDEX OF AUTHORITIES

**CASES**

*Browning-Ferris, Inc. v. Reyna,* 865 S.W.2d 925 (Tex. 1993)................................. 9

*Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497 (Tex. 1995*)* ........................... 10

*Coates v. Whittington,* 758 S.W.2d 749 (Tex. 1988)................................................ 11

*Hicks v. Ricardo,* 834 S.W.2d 587 (Tex. App.—Houston [1st Dist.] 1992, no writ)..

................................................................................................................................. 11

*Insurance Co. of North Am. v. Myers,* 411 S.W.2d 710 (Tex.1966).. .................... 10

*Lopez v. Carrillo,* 940 S.W.2d 232 (Tex. App. — San Antonio 1997). ................... 9

*Lowery v. Berry,* 269 S.W.2d 795 (Tex. 1954)........................................................ 11

**RULES**

Tex. R. Evid. 403 ..................................................................................................... 8

# STATEMENT OF THE CASE

On August 19, 2012, Pamela Walker ("Walker") filed suit against Justin Scopel and Suzanne Scopel for damages she sustained in a car accident that occurred on January 5, 2012. (CR 6-10).

On March 25, 2014, Walker non-suited all of her claims against Suzanne Scopel as well as her claims for medical expenses (RR 2:5), lost wages (RR 2:5), and punitive damages (RR 2:10) against Justin Scopel. Justin Scopel ("Scopel") stipulated to causing the accident. (RR 2:5).

Both parties announced ready for trial and proceeded only on the issue of damages for past and future physical pain and mental anguish and past a future physical impairment. On March 27, 2014, the jury awarded zero damages on each of Walker's claims. (CR 73).

The district court entered judgment that Walker take nothing on May 2, 2014. (CR 78). On May 27, 2014, Walker filed her notice of appeal. (CR 82).

# ISSUES PRESENTED

1.  Did the court err by admitting photographs whose probative value was substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury over the Plaintiff's objection?

2.  Was the jury free to award zero damages when liability was stipulated and there was undisputed evidence of damages caused by the collision?

# STATEMENT OF FACTS

On January 5, 2012, Justin Scopel ("Scopel") failed to control his speed and collided with the rear of Pamela Walker's ("Walker") vehicle. It is undisputed that Scopel caused the collison. (RR 2:5, 3:5). Walker's neck whipped forward and her back popped on impact. (RR 3:100). She called 911 and asked that an ambulance be dispatched because her neck and back were hurt in the collision. (RR 3:100). The ambulance arrived and then transported her to the hospital. (RR 3:15, 100).

At the hospital, Walker underwent a CAT scan (RR 3:101) and was diagnosed with lumbar strain and cervical strain due to the collision. (P. Ex. 1).

Walker was involved in another motor vehicle accident approximately seven months earlier, in June 2011. (RR 3:104). In that accident, she suffered a bruise on her hand. (RR 3:105). She experienced some short-term back and neck pain from that accident and sought a referral for physical therapy. (D. Ex. 2). However, the pain resolved, she had no lingering neck or back problems (RR 3:105), and she never sought treatment. (RR 3:123).

In contrast, after the collision with Scopel that is the subject of this case, Walker experienced "intense pain" that she had not experienced prior. (RR 3:113). She was no longer able to work in her garden (RR 3:91) as she had before the accident. (RR 3:87). She was unable to do her daughter's hair. (RR 3:92). She was no longer able to sit through her son's basketball games, and thus stopped

3

attending. (RR 3:92). She stopped cooking, no longer slept through the night, and was no longer able to take regular trips with her husband, all of which she had done prior to the collision. (RR 3:86, 91, 93).

After the collision, Walker went to see her primary-care physician, who referred her to physical therapy. (RR 3:107). She saw a physical therapist approximately 13 times. (RR 3:107). At trial, Renee Blalock ("Blalock"), the therapist who conducted the majority of Walker's sessions, testified. (RR 3:67-85).

Blalock testified about her assessment of Walker.

> Objectively, there were found to be deficits in her following the flexibility and her balance and her ability to perform what we call a functional squat. There were deficits in the mobility of her lumbar spine, which is her low back spine. There were -- there was weakness found in her lower extremity muscles as well as in her spinal and core musculature. There was also tenderness upon palpation, which means upon feeling the muscles there was pain and tenderness and her range of motion in her low back was limited with pain, as well. And that's the objective part of it.

(RR 3:70). Blalock also testified unequivocally that, based on her experience and training, Walker was not faking her injuries, as well as how she reached that conclusion. (RR 3:77-79).

Walker stopped physical therapy when her primary doctor referred her to a spine specialist, who in turn recommended that she see a chiropractor or an acupuncturist for her pain. (RR 3:107). She did see an acupuncturist and also began seeing Dr. Roberto Solis ("Dr. Solis"), a chiropractor. (RR 3:108).

4

Dr. Solis testified as both a fact witness and an expert witness at trial. (RR 3:19). He had reviewed Walker's MRI (P. Ex. 3) and testified that it showed bone spurring and a bulging disc, among other things. (RR 3:23). He further testified that while most of the findings on Walker's MRI could be attributed to degeneration or simple aging, in his expert opinion, the bulging disc was a result of trauma. (RR 3:25). This injury is consistent with the head whip one experiences in a rear-end collision. (RR 3:26). Furthermore, even if the bulging disc had existed prior to the collision with Scopel, that collision would have caused increased trauma to it. (RR 3:26).

Dr. Solis testified about over 30 visits with Walker. (RR 3:20-51). He testified that she was obviously in pain from the collision (RR 3:29), and that treatment would ease the pain, but it would return several hours later. (RR 3:32).

Dr. Solis testified that at each of the visits, he conducted "a palpatory assessment, basically just feeling for muscle tightness, muscle spasms, joints that may not be moving the way that they're supposed to." (RR 3:51). Each time he conducted this assessment, he detected "very consistent pain, inflammation, a tightness and tenderness in the upper neck and the back." (RR 3:52).

At trial, Scopel rested behind Walker, calling no witnesses. (RR 3:133). Scopel's evidence consisted of just three exhibits, including photographs of Walker's vehicle admitted over her objection. (D. Ex. 1).

Scopel also presented an email showing that Walker had previously sought a referral for physical therapy (RR 3:122, D. Ex. 2) and a portion of her medical records showing that she had experienced some arm pain prior to the accident, but that the accident had exacerbated it. (RR 3:129, D. Ex. 3).

## SUMMARY OF THE ARGUMENT

The trial court erred by admitting three photographs offered by Scopel. The photographs were of extremely limited probative value to the amount of physical pain, mental anguish, and physical impairment suffered by Walker, which were the only questions before the jury. What little, if any, probative value the photographs did have was substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury.

The jury awarded Walker no damages after speculating that because the photographs showed minimal damage to Walker's vehicle, the collision must have been low-impact. The jury further speculated that Walker could not have been injured in the purportedly low-impact collision.

The jury was not at liberty to award Walker no damages when the evidence was undisputed that the collision caused Walker some amount of damages for physical pain and mental anguish and physical impairment.

# ARGUMENT

**A.** **The trial court erred in admitting photographs of extremely limited probative value that was substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury.**

Walker moved to exclude three photographs (D. Ex. 1) of her vehicle taken by Scopel after the collision. (RR 2:11). The court denied her motion and admitted the photographs into evidence. (RR 2:12). The photographs were published to the jury during Scopel's testimony. (RR 3:15). Scopel's counsel implied through his questioning, and later argued that because her vehicle was not badly damaged, she could not have been hurt. (RR 3:16, 4:20).

The probative value of the photographs was limited, at best. While they clearly would have been relevant to any property damage claim, there was no claim for property damage at issue in the trial. (CR 73). The photographs also would have been probative of the issue of causation, but causation had been stipulated. (RR 2:5).

The photographs were simply of extremely limited, if any, probative value to Walker's physical pain, mental anguish, or physical impairment, which were the only questions before the jury. What little probative value they might have had was clearly substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury and they should have been excluded under Tex. R. Evid. 403.

8

Scopel introduced the photograph in order to invite the jury to speculate that because the damage to Walker's vehicle was relatively minor, the collision must have been low-impact. The jury was then invited to draw the further speculative conclusion that because the collision was purportedly low-impact, Walker must be faking her injuries. (CR 4:20).

This is simply conjecture, not evidence. "Some suspicion linked to other suspicion produces only more suspicion, which is not the same as . . . evidence." *Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 927 (Tex. 1993). Clearly the danger for unfair prejudice, confusing the issues, and misleading the jury was great.

Furthermore, the probative value of the photographs to claims before the jury was so minimal as to border on irrelevance. However, even if it could meet that minimal standard, the probative value was so slight that the great danger for unfair prejudice, confusing the issues, and misleading the jury substantially outweighed it.

Proving causation between negligence and injury requires expert testimony. *Lopez v. Carrillo*, 940 S.W.2d 232, 234 (Tex. App. — San Antonio 1997).

To constitute evidence of causation, an expert opinion must rest in reasonable medical probability. *Insurance Co. of North Am. v. Myers*, 411 S.W.2d 710, 713 (Tex.1966). This rule applies whether the opinion is expressed in testimony or in a medical record, as the need to avoid opinions based on speculation and conjecture is identical in both situations.

*Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 500 (Tex. 1995).

Scopel's opinion (RR 3:16) and his counsel's opinion (RR 4:20) that the photographs are evidence that the collision did not cause any damages for physical pain, mental anguish, and physical impairment to Walker simply cannot meet this standard.

Walker proved causation between Scopel's negligence and her injuries through Dr. Solis' expert testimony. (RR 3:17-53). Scopel failed to negate Walker's proof either through his own expert or through his cross-examination of Dr. Solis. The photographs simply lacked any meaningful probative value in an area that is the domain of expert testimony.

Clearly the jury was confused and misled by the photographs. It is the only way to explain their decision to award no damages whatsoever despite the overwhelming evidence that the collision did indeed cause at least some amount of physical pain, mental anguish, and physical impairment to Walker.

**B.** **The jury was not at liberty to award no damages to Walker. The evidence that Walker suffered some amount of physical pain and mental anguish and physical impairment was undisputed.**

A jury is not at liberty to award zero damages when the evidence is undisputed that a plaintiff suffered injury. *See Lowery v. Berry*, 269 S.W.2d 795, 796–97 (Tex. 1954). If any of the jury's damages findings is against the great weight and preponderance of the evidence, the proper remedy is to reverse the verdict and remand the case for a new trial. *Hicks v. Ricardo*, 834 S.W.2d 587, 590 (Tex. App.—Houston [1st Dist.] 1992, no writ).

The only evidence presented by Scopel, other than the improperly admitted photographs, was an email and a portion of Walker's medical records showing that she had experience some pain prior to the collision. (D. Ex. 2, D. Ex. 3). As any first year law student can tell you, it is well settled that a tortfeasor takes the plaintiff as he finds her. *See Coates v. Whittington*, 758 S.W.2d 749, 752 (Tex. 1988) (a.k.a. the "eggshell skull rule"). None of Scopel's evidence, including the photographs, dispute Walker's ample evidence that she suffered some amount of damages as a result of the collision.

Whether or not Walker had experienced pain at some point in her life prior to the collision does not absolve Scopel of responsibility for the damages he caused. Even if Walker had some actual pre-existing condition, which Scopel's

11

meager evidence does not show, he is still responsible for her damages to the degree that his negligence aggravated the condition.

In his expert testimony, Dr. Solis conceded that he could not say for certain that Walker did not have a torn disc prior to the collision with Scopel. However, he stated unequivocally, "every single accident you have will cause increased trauma to those particular areas. It basically is like pouring more fuel on the fire." (RR 3:26-27). This simple fact is not disputed or called into question in any way anywhere in the record. With causation of the collision conceded, this evidence alone renders the jury's award of no damages as against the great weight and preponderance of the evidence.

The jury awarded Walker no damages for past or future physical pain and mental anguish despite undisputed evidence that she had suffered physical pain and mental anguish as a result of Scopel's negligence.

Dr. Solis testified that Walker was obviously in pain. (RR 3:29). He also conducted "several orthopedic tests that were positive for inflamed joints, pain in the neck, and the low back." (RR 3:21). On each of the more than 30 times he saw her, he conducted a palpatory assessment. Each and every time, he found "very consistent pain, inflammation, a tightness and tenderness in the upper neck and the back." (RR 3:52).

Blalock testified that she objectively found "pain and tenderness and [Walker's] range of motion in her low back was limited with pain, as well." (RR 3:70). She further testified that she was trained to detect people faking pain (RR 3:77), how she detects it (RR 3:78-79), and that Walker was not faking her pain. (RR 3: 77-79).

Gregory Walker testified that when he first saw Walker after the collision, "I found my wife was in pain, discomfort." (RR 3:90). He also testified about having to massage his wife's back to relieve the pain from back spasms. (RR 3:90-91).

Walker herself testified to the "intense pain" she experienced after the collision that she had never experienced prior. (RR 3:113). She also testified that while she had experienced slight numbness prior to the collision, she had not experienced the type of intense pain she had afterwards. (RR 3:133).

As to future physical pain and mental anguish, Walker testified that even at the time of trial, she had to wear patches to control the pain and spasms. (R 3:133). The fact that the pain persisted more than two years after the collision makes it a near certainty that it would continue after the trial and that she would experience at least some amount of physical pain and mental anguish in the future.

The jury also awarded Walker no damages for past or future physical impairment despite undisputed evidence that she had suffered physical impairment as a result of the collision.

In addition to seeing bone spurring and disc bulging in Walker's MRI (RR 3:23), Dr. Solis detected inflamed joints (RR 3:21), general inflammation, and tightness and tenderness when he examined Walker after the collision. (RR 3:52).

Blalock also testified to Walker's physical impairment. After the collision, Walker objectively had flexibility deficits, mobility deficits, and muscle weakness in her spinal and core musculature. (RR 3:70). She also had difficulty tolerating exercises and "required frequent position changes due to difficulty tolerating one position for longer than five minutes." (RR 3:70-71).

Gregory Walker provided ample evidence of Walker's physical impairment. He testified that prior to the collision, Walker gardened. (RR 3:87). After the collision, Walker was no longer able to garden. (RR 3:91). He testified that prior to the collision, he and Walker took regular trips (RR 3:86). After the collision, she was unable to sit for the period of time required to travel on a regular basis. (RR 3:91).

He testified that Walker did not feel physically up to doing her daughter's hair after the collision (RR 3:92) and that she was no longer able to attend her son's basketball games. (RR 3:92, 95). Furthermore, she stopped cooking and stopped sleeping through the night as a result of the physical impairment she suffered as a result of the collision. (RR 3:93).

14

Gregory Walker also provided some evidence of future physical impairment. He testified that his wife has gotten better, but she still needed to stretch more and was still trying to regain a sense of normalcy. (RR 3:95).

Walker's own testimony was that she had experienced no lingering neck or back problems from her previous collision. (RR 3:105). She testified that she could no longer drive or ride in a car for more than an hour under normal circumstances after the collision. (RR 3:111). She testified that she could no longer engage in regular sexual activity with her husband (RR 3:114), which he corroborated. (RR 3:91).

She also testified that she had spasms while testifying at the trial itself (RR 3:133), making it a near certainty that the impairment would continue in the future.

None of the evidence that Walker sustained damages in the collision was disputed in any way. All of Scopel's evidence, including the photographs (D. Ex. 1), the email (D. Ex.2), and the excerpt of Walker's medical records (D. Ex. 3), go to **the degree** to which she suffered damage, not **whether** she suffered damage. The evidence is thus undisputed that Walker suffered some damages as a result of the collision and the jury was not at liberty to award zero damages.

## PRAYER

For the foregoing reasons, Appellant respectfully requests this honorable court to reverse the judgment, grant a new trial, and remand this case to the district court.

Respectfully submitted,

Law Offices of Reginald E.
McKamie, Sr., P.C.


/s/ Reginald E. McKamie, Sr_____
**REGINALD E. MCKAMIE, SR.**
TBN: 13686750
1210 Antoine, Suite 100
Houston Texas 77055
(713) 465-2889
(713) 465-2894 fax
Attorney for Appellant:
**PAMELA WALKER**

## CERTIFICATE OF SERVICE

I certify that a copy of this instrument has been served upon opposing counsel.

/s/ Reginald E. McKamie, Sr_____
**REGINALD E. MCKAMIE, SR.**

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i) because it contains 3,422 words.

/s/ Reginald E. McKamie, Sr____
**REGINALD E. MCKAMIE, SR.**

# APPENDIX

| | | |
|---|---|---|
| PAMELA DENICE WALKER, **Plaintiff** | § § § | IN THE DISTRICT COURT |
| vs. | § § | FORT BEND COUNTY, TEXAS |
| JUSTIN WAYNE SCOPEL, **Defendant** | § § § | 268th JUDICIAL DISTRICT |

## CHARGE OF THE COURT

LADIES AND GENTLEMEN OF THE JURY:

This case is submitted to you by asking questions about the facts, which you must decide from the evidence you have heard in this trial. You are the sole judges of the credibility of the witnesses and the weight to be given their testimony, but in matters of law, you must be governed by the instructions in this charge. In discharging your responsibility on this jury, you will observe all the instructions which have previously been given you. I shall now give you additional instructions which you should carefully and strictly follow during your deliberations.

I.    Do not let bias, prejudice or sympathy play any part in your deliberations.

In arriving at your answers, consider only the evidence introduced here under oath and such exhibits if any, as have been introduced for your consideration under the rulings of the court, that is, what you have seen and heard in this courtroom, together with the law as given you by the court. In your deliberations, you will not consider or discuss anything that is not represented by the evidence in this case.

Since every answer that is required by the charge is important, no juror should state or consider that any required answer is not important.

You must not decide who you think should win, and then try to answer the questions accordingly. Simply answer the questions, and do not discuss nor concern yourselves with the effect of your answers.

You will not decide the answer to a question by lot or by drawing straws, or by any other method of chance. Do not return a quotient verdict. A quotient verdict means that the jurors agree to abide by the result to be reached by adding together each juror's figures and dividing by the number of jurors to get an average. Do not do any trading on your answers; that is, one juror should not agree to answer a certain question one way if others will agree to answer another question another way.

1

70

6. You may render your verdict upon the vote of ten or more members of the jury. The same ten or more of you must agree upon all of the answers made and to the entire verdict. You will not, therefore, enter into an agreement to be bound by a majority or any other vote of less than ten jurors. If the verdict and all of the answers therein are reached by unanimous agreement, the presiding juror shall sign the verdict for the entire jury. If any juror disagrees as to any answer made by the verdict, those jurors who agree to all findings shall each sign the verdict.

These instructions are given to you because your conduct is subject to review the same as that of the witnesses, parties, attorneys and the judge. If it should be found that you have disregarded any of these instructions, it will be jury misconduct and it may require another trial by another jury; then all of our time will have been wasted.

The presiding juror or any other who observes a violation of the court's instructions shall immediately warn the one who is violating the same and caution the juror not to do so again.

When words are used in this charge in a sense which varies from the meaning commonly understood, you are given a proper legal definition, which you are bound to accept in place of any other meaning.

Answer all questions unless otherwise instructed. All answers must be based on a preponderance of the evidence. If you do not find that a preponderance of the evidence supports an answer, then do not answer. The term "Preponderance of the evidence" means the greater weight and degree of credible testimony or evidence introduced before you and admitted in this case. Your answers must be based on a preponderance of the evidence.

A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

After you retire to the jury room, you will select your own presiding juror. The first thing the presiding juror will do is to have this complete charge read aloud and then you will deliberate upon your answers to the questions made.

It is the duty of the presiding juror:

To preside during your deliberations;

2

71

To see that your deliberations are conducted in an orderly manner and in accordance with the instructions in this charge;

To write out and hand to the bailiff any communications concerning the case which you desire to have delivered to the judge;

To vote on the questions;

To write your answers to the questions in the spaces provided; and

To certify your verdict in the space provided for the presiding juror's signature or to obtain the signatures of all the jurors who agree with the verdict if your verdict is less than unanimous.

After you have retired to consider your verdict, no one has any authority to communicate with you except the bailiff of this court. You should not discuss the case with anyone, not even with other members of the jury, unless all of you are present and assembled in the jury room. Should anyone attempt to talk to you about the case before the verdict is returned, whether at the courthouse, at your home, or elsewhere, please inform the judge of this fact.

When you have answered all of the questions which you are required to answer under the instructions of the judge, and your presiding juror has placed your answers in the spaces provided, and signed the verdict as presiding juror or obtained the signatures, you will advise the bailiff at the door of the jury room that you have reached a verdict, and then you will return into court with your verdict.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the Court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any:

**FILED**

MAR 2 7 2014

AT_____9:55_____A. M. _RC_

Annie Rebecca Elliott

Clerk District Court, Fort Bend Co., TX

3

72

## Question No. 1

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate PAMELA WALKER for her injuries, if any, that resulted from the occurrence in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.

Do not include any amount for any condition existing before the occurrence in question, except to the extent, if any, that such other condition was aggravated by any injuries that resulted from the occurrence in question.

Answer in dollars and cents for damages, if any, that were sustained in the past (and that in reasonable probability will be sustained in the future.)

|  | Past | Future |
|---|---|---|
| Physical Pain and Mental Anguish | $ 0 | $ 0 |
| Physical Impairment | $ 0 | $ 0 |

4

73

## Certificate

We, the jury, have answered the above and foregoing questions as herein indicated, and herewith return same into court as our verdict.

(To be signed by the presiding juror if the jury is unanimous.)

_____
PRESIDING JUROR

Albert John Freberg Jr.
Printed Name of Presiding Juror

Juror's Signatures

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Jurors' Printed Names

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**FILED**

MAR 2 7 2014
AT_____11:18_____A.M. RC

Clerk District Court, Fort Bend Co., TX

5

74

12 – DCV – 200283
FIJJ
Final Judgment by Jury Verdict
3030442

Filed
4/1/2014 11:45:30 AM
Annie Rebecca Elliott
District Clerk
Fort Bend County, Texas
Rachel Crisler

## CAUSE NO. 12-DCV-200283

| | | |
|---|---|---|
| PAMELA WALKER | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| V. | § | FORT BEND COUNTY, TEXAS |
| | § | |
| | § | |
| SUZANNE SCOPEL and | § | 268TH JUDICIAL DISTRICT |
| JUSTIN SCOPEL | | |

### FINAL JUDGMENT

On the 25th day of March, 2014, this case was called for trial. Plaintiff, PAMELA WALKER non-suited her causes of action against Defendant, SUZANNE SCOPEL. Plaintiff, PAMELA WALKER and Defendant JUSTIN SCOPEL appeared through their respective attorneys and announced ready for trial.

After a jury was impaneled and sworn, it heard the evidence and arguments of counsel. In response to the jury charge, the jury made findings that were read and accepted, which the Court received, filed and entered of record. The questions submitted to the jury and the jury's findings are attached as Exhibit A and incorporated by reference.

Accordingly the Court orders that Plaintiff, PAMELA WALKER take nothing from Defendant JUSTIN SCOPEL. The Court further orders that court costs are adjudged against Plaintiff. This judgment finally disposes of all claims and all parties, and is appealable.

SIGNED this _2__ day of _May_, 2014.

_____
JUDGE PRESIDING

78

**APPROVED AS TO FORM AND CONTENT:**

IRESON & WEIZEL, PLLC

By:_____

Lansford O. Ireson, Jr.
State Bar No. 10412400
9720 Cypresswood Dr., Suite 238
Houston, Texas 77070
713-228-1160
713-228-1161 (Facsimile)

**ATTORNEY FOR DEFENDANTS**

**APPROVED AS TO FORM:**

THE LAW OFFICE OF REGINALD E. MCKAMIE, SR., P.C.

By:_____

Reginald E. McKamie, Sr.
State Bar No. 13686750
1210 Antoine Drive, Suite 100
Houston, Texas 77055
(713) 465-2889
(713) 465-2894 (Facsimile)

**ATTORNEY FOR PLAINTIFF**

79

Texas Rules of Evidence

Rule 403.
Excluding Relevant Evidence for Prejudice, Confusion, or Other Reasons

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.



DEFENDANT'S
EXHIBIT

1

tabbies

SCO 1





| Author | Note Status | Last Update User | Last Update Date/Time |
|---|---|---|---|
| Cherice M Conley-Harvey, MD | Signed | Cherice M Conley-Harvey, MD | 6/30/2011 9:50 AM |

**Telephone Encounter**

From: WALKER,PAMELA D
To: Cherice M Conley-Harvey, MD
Sent: Tue Jun 28, 2011  9:47 AM
Subject: Physical Therapy

Good Morning,

I was in a hit/run car accident last week and in need of a physical therapist. Would you please schedule me with one? I injured my left hand however; my neck and back are beginning to hurt. Thanks!

Please reply to this message by electronic messaging.



DEFENDANT'S
EXHIBIT
2

**K Kelsey-Seybold Clinic**    LAKES AT 610            WALKER,PAMELA D
8900 LAKES AT 610       MRN: 07282551
HOUSTON, TX 77054-2525    DOB: 12/14/1966, Sex: F
KSC COMPLETE CHART      Enc. Date:04/03/12

## Patient Information (continued)

### Meds Comments as of 2/27/2012

2/27/2012 Pt. Stopped reflux med. One week ago. Takes Nutrilite multi-vit.

### Ordered Medications

|  | Disp | Refills | Start | End |
|---|---|---|---|---|
| **Pregabalin (LYRICA) 25 MG OR CAPS** (Discontinued) <br> Sig: 1 po hs for one week, then bid | 60 each | 0 | 4/3/2012 | 5/4/2012 |

### All Results

No results found

### Vitals - Last Recorded

| Ht | Wt |  | BMI | LMP |
|---|---|---|---|---|
| 5' 7" (1.702 m) | 140 lb (63.504 kg) |  | 21.93 kg/m2 | 03/12/2012 |

Vitals History Recorded

### Progress Notes

**Keosha Albert Cma I** Certified Medical Assistant I 4/3/2012 9:11 AM Signed
Referral? Self referral

Chief complaint:
**Chief Complaint**
Patient presents with
• Back Pain

Pain: 2/10

**A) Chief complaint or Subjective:**

Where is your pain?: left arm pain for approx. 4-5 years, left arm tingling and numbness, leg tingling and numbness - emg 2010 neg for peripheral neuropathy. emg 2011 of left upper limb was normal. Reports aching and tingling/numbness in left arm is worse following an mva in early 2012.

When did this problem start? 3 month(s); sx also present prior for approx. 4 years, no inciting event 4 years ago
How did this pain start? gradually 4 years ago
Any inciting event?: yes - nothing in particular but cites an mva 3 mo ago making left arm symptoms worse

Is the pain improving, worsening, or stable over time?: worsening left shoulder and neck/lower back improving
Have you had this pain before? - reports no initially, but later states she's had left arm tingling and numbness for several years.

Typical pain severity: 2/10

DEFENDANT'S EXHIBIT
3

Printed on 5/31/2013 6:41 AM

KELSEY SEYBOLD CLINIC - MEDICAL

[5442558-04] 36

**K Kelsey-Seybold Clinic**  LAKES AT 610
8900 LAKES AT 610
HOUSTON, TX 77054-2525
KSC COMPLETE CHART

WALKER,PAMELA D
MRN: 07282551
DOB: 12/14/1966, Sex: F
Enc. Date:04/03/12

## Patient Information (continued)

### Progress Notes (continued)

Pain severity during flare-ups: 4/10

How often do you get a flare up? Several times a week and Factors that cause a flare up: prolonged sitting/lifting and bending

What is the duration of your pain? Minutues/hours/daily

**shoulder**

Describe your pain: Burning arm/shoulder, Dull, Pins/Needles back, Numbness arms and

What activity increases your pain? Sitting, Bending, Lifting, Driving

What have you tried for this pain? Rest, Heat, Physical Therapy, Medications - (ibuprofen),

**exercise**

Prior experience with neurontin: Caused suicidal ideation; SSRI, sx did not improve

Do you have any - Weakness yes - left arm and hand and Numbness yes - left arm and hand

What position/activities improve the pain?: None in particular

Which doctors have you seen for this problem? Physical Therapist and Neurologist

What diagnostic tests have you had for this pain? MRI Scan; Results:  and CT Scan; Results:

Blood Thinners:

### Allergies

| Allergen | Reactions |
|---|---|
| • Azithromycin | |
| *Felt like her throat was closing up.* | |
| • Codeine | Rash |
| • Nitrofurantoin | Hives |

### Current Outpatient Prescriptions

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • Ergocalciferol 50000 UNIT OR CAPS | Take 1 capsule by mouth once a week | 4 capsule | 1 |
| • Ibuprofen 600 MG OR TABS | Take 600 mg by mouth every 6 hours as needed | | |
| • IRON OR | Take by mouth | | |
| • OMEPRAZOLE 40 MG OR CPDR | TAKE 1 CAPSULE BY MOUTH EVERY MORNING 1/2 HOUR PRIOR TO BREAKFAST | 30 capsule | 0 |
| • Venlafaxine HCl (EFFEXOR XR) 37.5 MG OR CP24 | Take 1 capsule by mouth daily | 30 capsule | 2 |